Case Number: KC-2018-18
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 1 of 80 PageID #: 4

STATE OF RHODE ISLAND                    SUPERIOR COURT
KENT, SC

DAVID CURTIS

    VS.                                C.A. NO.: KC-2018-18

EMBRACE HOME LOANS, INC
ROUNDPOINT  MORTGAGE SERVICING,
CORPORATION

## AMENDED COMPLAINT

Plaintiff complains of Defendants as follows:

1.    Plaintiff, David Curtis is an individual residing at 105 Quaker Drive,
West Warwick, Rhode Island.

2.    Defendant, Embrace Home Loans, Inc.("Embrace") is corporation
incorporated in the State of Rhode Island on May 13, 1983.

3.    Defendant has a principal office of 25 Enterprise Center, Middletown,
Rhode Island.

4.    On or about April 29, 2016, Plaintiff  delivered  a mortgage
a mortgage payable to Mortgage Electronic Registration Systems, Inc. as nominee
for Embrace Home Loans in the amount of $284,009.00.

5.    Roundpoint Mortgage Servicing Corporation("Roundpoint")  is a
Florida corporation. It is the loan servicer for Plaintiff's mortgage.

6.    Embrace Home Loans claims to be the owner of Plaintiff's mortgage.

1

7.     Plaintiff's last payment accepted by Roundpoint from the Plaintiff

was for the month of May, 2017. After June 1, 2017, Plaintiff went into arrears

due to financial problems. Embrace, through Roundpoint refused to accept

Plaintiff's mortgage payment for October, 2017 online. It refused to accept any

other payments from Plaintiff.

8.     Roundpoint has made demand upon Plaintiff for the full payment of

all sums past due under the Note, but Plaintiff is unable to make said payment in

full. As a result it scheduled a foreclosure sale for January 9, 2017, which was

continued to January 30, 2018, with weekly advertising for the weeks between

January 9, 2017 and January 30, 2017.

9.     Plaintiff has an FHA mortgage as indicated by the attached Exhibit A.

There is no dispute that this mortgage is an FHA mortgage, which includes FHA

mortgage insurance.

10.     24 C.F.R. § 1024.41 is the loss mitigation provision of Regulation X,

which went into effect on January 10, 2014. A copy is attached as Exhibit B. This

Regulation provides in section(f):

(f)*Prohibition on foreclosure referral* -

(1)*Pre-foreclosure review period.* **A servicer shall not make the first notice or
filing required by applicable law for any judicial or non-judicial foreclosure
process unless:**

**(i) A borrower's mortgage loan obligation is more than
120 days delinquent;**

(ii) The foreclosure is based on a borrower's violation of a due-on-sale clause; or

(iii) The servicer is joining the foreclosure action of a superior or subordinate lienholder.

11.    Plaintiff's mortgage is due for June 1, 2017. The grace period for that payment allows Plaintiff to pay on or before June 16, 2017, without a late fee.

12.    Plaintiff tried to make his monthly payment online for October, 2017 and Roundpoint would not allow Plaintiff to make the payment. Thus as of that time, Plaintiff was not more than 120 days in arrears due to the failure to accept this payment.

13.    On August 25, 2017 Roundpoint made the first notice required for a nonjudicial foreclosure by mailing Plaintiff a  purported default notice pursuant to the terms of Plaintiff's mortgage.  A copy is attached as Exhibit C.

14.    It also mailed Plaintiff a Notice of Mediation, dated August 25, 2017, which is also required for a nonjudicial foreclosure.  A copy is attached as Exhibit D.

15.    These documents, which were the first and second notices required for a nonjudicial foreclosure, were mailed to Plaintiff despite the fact that Plaintiff's mortgage loan was not  in arrears for more than 120 days, in violation of 12 C.F.R. § 1024.41(f).

16.    Neither Roundpoint,  Embrace nor any person or entity acting on their behalf have ever accelerated the mortgage loan.

3

17.    On or about August 1, 2017 Plaintiff filedtransmitted to Roundpoint a complete online loss mitigation package by using the Roundpoint Mortgage website. Plaintiff transmitted to Roundpoint Mortgage all the electronic documents that it had requested.  On August 16, 2017, Plaintiff received from Roundpoint Mortgage an acknowledgment of his loss mitigation application, which had been the only communications that he had transmitted to Roundpoint Mortgage.  A copy of its response is attached as Exhibit E. In this email, Roundpoint indicated that it thanked Plaintiff for contacting Roundpoint and that his point of contact was Jeff Martin.

18.    Roundpoint never responded after this email was sent to Plaintiff.   It did not act on his loss modification application.

19.    Instead on August 25, 2017, Embrace, through Roundpoint commenced the foreclosure process by mailing Plaintiff a default letter and a mediation letter.

20.    Plaintiff's mortgage as an FHA mortgage was subject to Regulations of the Department of Housing and Urban Development. Such regulations do not authorize acceleration or foreclosure if not permitted by the Secretary of the Secretary of Housing and Urban Development. These regulations provide that the mortgagee must have a face to face meeting with the mortgagor, or make a reasonable effort to arrange such a meeting, before five full monthly installments

4

due on the mortgage are unpaid.  No such face to face meeting occurred nor was

attempted nor scheduled and thus this regulation was not complied with by any

mortgagee before an alleged acceleration of the loan was declared.  Thus this

alleged attempted foreclosure is invalid as acceleration was not in compliance with

24 CFR 203.604.  This section provides:

203.604

Contact with the mortgagor.
(a) [Reserved]
(b) **The mortgagee must have a face-to-face interview with the
mortgagor, or make a reasonable effort to arrange such a meeting,
before three full monthly installments due on the mortgage are
unpaid.**
**( emphasis added)** If default occurs in a repayment plan arranged
other than during a personal interview, the mortgagee must have a
face-to-face meeting with the mortgagor, or make a reasonable
attempt to arrange such a meeting within 30 days after such default
and at least 30 days before foreclosure is commenced, or at least 30
days before assignment is requested if the mortgage is insured on
Hawaiian home land pursuant to section 247 or Indian land pursuant
to section 248 or if assignment is requested under § 203.350(d) for
mortgages authorized by section 203(q) of the National Housing Act.
(c) A face-to-face meeting is not required if:
(1) The mortgagor does not reside in the mortgaged property,
(2) The mortgaged property is not within 200 miles of the
mortgagee, its servicer, or a branch office of either,
(3) The mortgagor has clearly indicated that he will not cooperate
in the interview,
(4) A repayment plan consistent with the mortgagor's circumstances
is entered into to bring the mortgagor's account current thus making
a meeting unnecessary, and payments thereunder are current, or
(5) A reasonable effort to arrange a meeting is unsuccessful.
(d) A reasonable effort to arrange a face-to-face meeting with the

mortgagor shall consist at a minimum of one letter sent to the
mortgagor certified by the Postal Service as having been dispatched.
Such a reasonable effort to arrange a face-to-face meeting shall also
include at least one trip to see the
mortgagor at the mortgaged property, unless the mortgaged property
is more than,200 miles from the mortgagee, its servicer, or a branch
office of either, or it is known that the mortgagor is not residing in
the mortgaged property.

(e) (1) For mortgages insured pursuant to section 248 of the National
Housing Act, the provisions of paragraphs (b), (c) and (d) of this
section are applicable, except that a face-to-face meeting with the
mortgagor is required, and a reasonable effort to arrange such a
meeting shall include at least one trip to see the mortgagor at the
mortgaged property, notwithstanding that such property is more than
200 miles from the mortgagee, its servicer, or a branch office of
either. In addition, the mortgagee must document that it has made at
least one telephone call to the mortgagor for the purpose of trying to
arrange a face-to-face interview. The mortgagee may appoint an agent
to perform its responsibilities under this paragraph.

(2) The mortgagee must also:

(i) Inform the mortgagor that HUD will make information regarding
the status and payment history of the mortgagor's loan available to
local credit bureaus and prospective creditors;

(ii) Inform the mortgagor of other available assistance, if any;

(iii) Inform the mortgagor of the names and addresses of HUD
officials to whom further communications may be addressed.


21.    Plaintiff never had a face to face meeting.  No representative of

Roundpoint Mortgage or Embrace Home Loans came to his home to discuss loss

mitigation.

22.    The HUD Regulations also require, prior to declaration of any

default or acceleration of the note,  that the mortgagor be provided information

on all loss mitigation options. Roundpoint was required to Ito offer and

communicate with the Defendants regarding the loss mitigation options

indicated in the Regulations. These were the following loss mitigation

options.

a.    Deeds in lieu of foreclosure
b.    preforclosure sales
c.    assumptions
d.    special forebearance
e.    recasting of mortgages
f.    partial claims

23.    These requirements are located in the Code of Federal

regulations, which state:

**203.605 Loss mitigation performance.**

**(a)***Duty to mitigate.* Before four full monthly installments due on
the underline mortgage have become unpaid, the underline mortgagee **shall** evaluate on a monthly
basis all of the loss mitigation techniques provided at § 203.501 to determine
which is appropriate. Based upon such evaluations, the mortgagee shall take the
appropriate loss mitigation action. Documentation must be maintained for the
initial and all subsequent evaluations and resulting loss mitigation actions. Should
a claim for mortgage insurance benefits later be filed, themortgagee shall maintain
this documentation in the claim review file under the requirements of § 203.365(c).

**(b)***Assessment of mortgagee's loss mitigation performance.*

    **(1)** HUD will measure and advise mortgagees of their loss mitigation
performance through the Tier Ranking System (TRS). Under the TRS, HUD will
analyze each mortgagee's loss mitigation efforts portfolio-wide on a quarterly
basis, based on 12 months of performance, by computing ratios involving loss
mitigation attempts, defaults, and claims. Based on the ratios, HUD will
group mortgagees in four tiers (Tiers 1, 2, 3, and 4), with Tier 1 representing the
highest or best ranking mortgagees and Tier 4 representing the lowest or least
satisfactory ranking mortgagees. The precise methodology for calculating the
TRS ratios and for determining the tier stratification (or cutoff points) will be

provided through FEDERAL REGISTER notice. Notice of future TRS methodology or stratification changes will be published in the FEDERAL REGISTER and will provide a 30-day public comment period.

**(2)** Before HUD issues each quarterly TRS notice, HUD will review the number of claims paid to the mortgagee. If HUD determines that the lender's low TRS score is the result of a small number of defaults or a small number of foreclosure claims, or both, as defined by notice, HUD may determine not to designate the mortgagee as Tier 3 or Tier 4, and the mortgagee will remain unranked.

**(3)** Within 30 calendar days after the date of the TRS notice, a mortgagee that scored in Tier 4 may appeal its ranking to the Deputy Assistant Secretary for Single Family or the Deputy Assistant Secretary's designee and request an informal HUD conference. The only basis for appeal by the Tier 4 mortgagee is disagreement with the data used by HUD to calculate the mortgagee's ranking. If HUD determines that the mortgagee's Tier 4 ranking was based on incorrect or incomplete data, the mortgagee's performance will be recalculated and the mortgagee will receive a corrected tier ranking score.

**(c)** *Assessment of civil money penalty.* A mortgagee that is found to have failed to engage in loss mitigation as required under paragraph (a) of this section shall be liable for a civil money penalty as provided in § 30.35(c) of this title.

24.    Prior to transmitting a default notice or accelerating the mortgage

loan, Roundpoint did not provide to the Plaintiff or discuss with the

Plaintiff any of the loss mitigation options pursuant to 24 CFR 203.51 were

provided to or discussed with the Plaintiff. This section provides:

**§ 203.501 Loss mitigation.**

Mortgagees must consider the comparative effects of their elective servicing actions, and must take those appropriate actions which can reasonably be expected to generate the smallest financial loss to the Department. Such actions include, but are not limited to, deeds in lieu of foreclosure under § 203.357, pre-foreclosure sales under § 203.370, partial claims under § 203.414, assumptions under § 203.512, special forbearance under §§ 203.471 and 203.614, and recasting of mortgages under § 203.616. HUD may prescribe conditions and requirements for the appropriate use of these loss mitigation actions, concerning such matters

as <u>owner</u>-occupancy, extent of previous defaults, prior use of loss mitigation, and evaluation of the mortgagor's income, credit and property.

24.   Thus there was no basis for the loan being declared in default or accelerated without compliance with the HUD regulations.

25.   Embrace Home Loans is a Rhode Island corporation located in Middletown, Rhode Island. It is located within 200 miles of plaintiff's home.

26.   Plaintiff's attorney hired an expert witness who determined that as of November, 2017, the mortgage loan was owned by Ginnie Mae Pool number MA3662. The issuer for this pool was Embrace Home Loans. A copy of the pool information is attached as Exhibit F.

27.   Plaintiff never received a notice that the ownership of the mortgage loan had been changed as required by 15 USC 1641(f), which states:

**(f) Treatment of servicer**
**(1) In general**
A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation.
**(2) Servicer not treated as owner on basis of assignment for administrative convenience**
A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation. Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation.
**(3) "Servicer" defined**

9

Case Number: KC-2018-0118
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 10 of 80 PageID #: 13

For purposes of this subsection, the term "servicer" has the same meaning as in section 2605 (i)(2) of title 12.
(4) Applicability
This subsection shall apply to all consumer credit transactions in existence or consummated on or after September 30, 1995.

## COUNT I

**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE TRUTH IN LENDING ACT BY DEFENDANT'S FAILURE TO IDENTIFY THE OWNER OF THE NOTE AND THE MORTGAGE AND THE MASTER SERVICER FOR THE NOTE AND THE MORTGAGE**

28.   Paragraphs 1-27 are incorporation by reference.

29.   Paragraphs 1-28 are incorporated by reference.

30.   This is an action for damages brought by the Plaintiff, who is a consumer, for Embrace's violations of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA").

31.   Specifically, Plaintiff seeks the remedies provided in TILA for Defendant's failure to respond a request for the identity of the owner and holder of Plaintiff's mortgage loan as required by 15 U.S.C. §§ 1641(f) and 1641(g) respectively.

32.   This Court has jurisdiction pursuant to 14 U.S.C. § 1641(f) to provide private remedies for failure to respond to a borrower's request for information under that section. 15 U.S.C. § 1640 provides for statutory damages of the type alleged in this Complaint to a range of not less than $400 nor greater than $4000.00. Jurisdiction is further conferred on this Court by 15 U.S.C. §1640(e).

33.   The Defendant, Embrace, is a Rhode Island corporation.

34.   On April 29, 2016, Embrace gave a mortgage loan to Plaintiff for the purpose of purchasing the Plaintiff's residence at 105 Quaker Drive, West Warwick, Rhode Island (the "property"), referred to in this complaint as the "Mortgage loan".

Case Number: KC-2018-0118
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 11 of 80 PageID #: 14

35.    In connection with the Mortgage Loan the Plaintiff executed a promissory note to Embrace in the original principal amount of $284,009.00 payable to Embrace.

36.    The Mortgage Note was secured by a Mortgage on the property dated April 29, 2016  and recorded in the land evidence records of the Town of West Warwick, , which named Embrace as Lender and Mortgage Electronic Registration Systems, Inc. as mortgagee and as nominee of Embrace.

37.    The mortgage loan is a "federally related mortgage loan" as defined in 12 U.S.C. § 2602(1).

38.    On or about November 10, 2017,  Plaintiff, by his attorney,  mailed a letter to Roundpoint requesting the name of the owner of the Mortgage Note and clearly alerting Defendant to the fact that his request was being made pursuant to TILA,  U.S.C. §15 1641.

39.    Plaintiff caused such a request to be signed by his attorney and mailed to Roundpoint at its designated address for receipt of Requests for Information and Notices of Error , PO Box 19789, Charlotte, NC 28219-9409.

40.    This letter was sent by certified mail, with United States Postal Service certified mail number 9407110898765001104939

41.    This letter was received by Roundpoint on November 13,  2017.

42.    Neither Embrace nor  Roundpoint responded within 10 business days or at any time to Plaintiff's request to provide the owner and holder of the Mortgage Note , thus violating 15 U.S.C. §1641(f) with  respect to the Mortgage Loan.

43.    The Plaintiff has incurred actual damages, costs and legal fees in regard to this action:

a.    He has incurred costs for gasoline to visit his attorney on at least five occasions, driving to his attorney's office for five  round trips totaling 17.8miles. The IRS standard mileage allowance provides for .56 per mile.

11

b.    He has had to use his cell phone to call and receive calls from his attorney. These calls are charged to him pursuant to him for cell phone usage and monthly fees.

c.    Plaintiff has used electricity to recharge his cell phone for calls when he spoke with his attorney.

d.    He has incurred attorney fees and costs for the prosecution of this action.

WHERFORE, Plaintiff demands Judgment against Embrace for statutory

damages of at least $4,000.00, plus actual damages, plus attorney fees and costs.


                                    DAVID CURTIS
                                    By his Attorney

February 5, 2018

                                    /s/ John B. Ennis
                                    JOHN B. ENNIS, ESQ. #2135
                                    1200 Reservoir Avenue
                                    Cranston, RI 02920
                                    (401) 943-9230
                                    Jbelaw75@gmail.com


## COUNT II

**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE TRUTH IN LENDING ACT BY EMBRACE'S FAILURE TO SEND THE PLAINTIFF AN ACCURATE PAYOFF STATEMENT PURSUANT TO THE PROVISIONS OF 15 U.S.C. 1639 ON DCECEMBER 19, 2017**


44.    Paragraphs 1-43 are incorporated by reference.

45.    This is an action for damages brought by the Plaintiff, who is a consumer, for Embrace's violations of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA").

46.     Specifically, Plaintiff seeks the remedies provided in TILA for Defendants' transmission to the Plaintiff of an inaccurate payoff statement dated December 19, 2017 in violation of 15 U.S.C. § 1639.

47.     This Court has jurisdiction pursuant to 15 U.S.C. §1640 to provide private remedies for providing an inaccurate payoff statement to the borrower. 15 U.S.C. § 1640 provides for statutory damages of the type alleged in this Complaint to a range of not less than $400.00 nor greater than $4,000.00. Jurisdiction is further conferred on this Court by 15 U.S.C. §1640(e).

48.     The Defendant, Roundpoint is a corporation that services residential mortgage loans.  It claims to be the servicer of the mortgage loan, which is the subject of this complaint

49.     Embrace claims to be the owner of the mortgage note and mortgage loan.

50.     The mortgage loan is a "federally related mortgage loan" as defined in 12 U.S.C. § 2602(1).

51.     On or about December 19, 2017 Defendant Roundpoint, on behalf of the owner of the mortgage note, sent the Plaintiff a payoff statement.

52.     This statement erroneously stated that the Plaintiff owed the following amounts:

a.      $ $768.94 in corporate advances, which included improperly charged  legal fees and costs along with unreasonable charges for property inspection/ preservations.

b.      An escrow/impound overdraft of $4,027.08

c.      It also incorrectly stated the amount of the principal, interest and escrow balance.

53.     These fee included charges for an improper foreclosure attempt as alleged in this complaint. They also included fees for unreasonable and unnecessary property preservation charges that were charged to the mortgage loan and which were not paid in that amount to the vendor, which sent the invoice for these charges to Roundpoint.

13

Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

54.     As a result of this failure to comply with TILA, Defendant, Embrace is liable for actual damages and statutory damages of up to $4,000.00 for this inaccurate payoff statement which was sent to the Plaintiff.

55.     The Plaintiff has incurred actual damages, costs and legal fees in regard to this action:

a.     He has incurred costs for gasoline to visit his attorney on at least five occasions, driving to his attorney's office for five round trips totaling 17.8miles. The IRS standard mileage allowance provides for .56 per mile.

b.     He has had to use his cell phone to call and receive calls from his attorney. These calls are charged to him pursuant to him for cell phone usage and monthly fees.

c.     Plaintiff has used electricity to recharge his cell phone for calls when he spoke with his attorney.

d.     He has incurred attorney fees and costs for the prosecution of this action.

e.     His mortgage loan account has been charged unreasonable fees and costs for uncorroborated and unreasonable and unnecessary property inspections and improper legal fees and costs. Such costs have rendered a modification of the mortgage loan more expensive to the Plaintiff

WHERFORE, Plaintiff demands Judgment against Embrace for statutory damages of at least $4,000.00, for sending an inaccurate payoff statement in violation of TILA plus actual damages, attorney fees and costs and all other just and proper relief.

DAVID CURTIS
By his Attorney

February 5, 2018

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, RI 02920
(401) 943-9230
Jbelaw75@gmail.com

## COUNT III
## VIOLATIONS OF REGULATION X

56.    Paragraphs 1-55 are incorporated by reference.


57.    This is an action for actual and statutory damages filed by the Plaintiff for violations of the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and specifically of the Regulations enacted pursuant thereto by the Consumer Financial Protection Bureau (CFPB).  This is also an action for actual and statutory damages filed by the Plaintiff for violations of the Real Estate Settlement Procedures Act, ("RESPA") and the Truth in Lending Act, 15 U.S.C. § 1601 et. seq.  ("TILA").


58.    This action is specifically filed to enforce the Regulations that became effective on January 10, 2014, specifically 12 CFR § 1024.36(c) and 12 CFR §1024.36(d)(2)(i)(A) of Regulation X.


59.    Roundpoint performs its mortgage loan servicing business under the name of Roundpoint /Embrace. Roundpoint is the current servicer of a Promissory Note and Mortgage on the Plaintiff's residential real estate.


60.    In January 2013, the Consumer Financial Protection Bureau issued a number of final rules concerning mortgage markets in the United States, pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), Public Law No. 111-203, 124 Stat. 1376 (2010).


15

Case Number: PC-2018-1018
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 16 of 80 PageID #: 19

61.     Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z) Mortgage Servicing Final Rules, 78 FR §10901 (Regulation Z)(February 14, 2013) and 78 FR §10695 (Regulation X)(February 14, 2013). These Regulations became effective on January 10, 2014.

62.     The residential mortgage loan in this case is a "federally related mortgage loan" as that term is defined by Regulation 1024.2 (b) of the said Regulations.

63.     The Defendant in this case is subject to the said Regulations and does not qualify for any of the exceptions noted in the said Regulations for "small servicers." Neither is Defendant a "qualified lender," as defined in 12 CFR § 617.7000.

64.     The Plaintiff is asserting a claim for relief against the Defendant for breach of the specific Rules under Regulation X as set forth below. The Plaintiff has a private right of action under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(f) for these breaches and such an action includes actual damages, costs, statutory damages and attorney's fees.

65.     On or about November 10, 2017, the Plaintiff sent a written notice of error to the Defendant that included Defendant that included the name of the borrower, the identity of the account, the property description and stated the information requested. This request was made pursuant to 12 CFR § 1024.36(a).

66.     The Notice of Error was mailed by certified mail, return receipt requested, having an article number  9407110898765002201606.  The Notice was mailed to the address noticed by the Defendant on its website as the designated address for sending a Notice of Error as provided for by 12 CFR § 1024.35.

67.     The Notice was received by the Defendant on December 9, 2017.

68.     The Plaintiff's Notice of Error referenced failure to correct an error by which Defendant had added legal fees, advertising costs and other improper fees relating to an attempted foreclosure of Plaintiff's home by declaring the loan in default without having provided the consumer a face to face meeting or advised the consumer of any loss mitigations options.

16

69.    Under 12 CFR 1024.35 the Notice of Error had to be responded to by the Defendant within thirty (30) business days of the date of the receipt of the Request. The Regulations provide that in computing this time period public holidays, Saturdays and Sundays are excluded. As a result, in this case, the written response was due no later than January 24, 2018.

70.    Defendant purported to respond by a letter dated December 28, 2017 in which it denied that an error had occurred. It referenced a letter being dropped off at the Plaintiff's home when he was not at home regarding a solicitation for a face to face meeting and did not respond to the Notice of Error relating to the failure to provide and indicate to the Plaintiff all loss mitigation options available. It refused to remove the fees improperly charged to the mortgage loan account.

71.    The Defendant in this case has exhibited a pattern and practice of failing to comply with the Regulations as it failed to respond to or correct the error as indicated in this complaint.

72.    As a result of this lack of compliance by the Defendant, Roundpoint is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees for failure to correct the error.

73.    The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error:

a.    He has incurred costs for gasoline to visit his attorney on at least five occasions, driving to his attorney's office for five round trips totaling 17.8miles. The IRS standard mileage allowance provides for .56 per mile.

b.    He has had to use his cell phone to call and receive calls from his attorney. These calls are charged to him pursuant to him for cell phone usage and monthly fees.

c.    Plaintiff has used electricity to recharge his cell phone for calls when he spoke with his attorney.

d.    He has incurred attorney fees and costs for the prosecution of this action.

e.    He has incurred mailing, paper and postage costs for the mailing and transmittal of this Notice of Error.

17

    f.    His mortgage loan account has been charged unreasonable fees and costs for uncorroborated and unreasonable and unnecessary property inspections and improper legal fees and costs. Such costs have rendered any modification of the mortgage loan more expensive to the Plaintiff.

74.    The Plaintiff has demonstrated through the failure of the Defendant to correct any of the Notices of Error in this case that the Defendant has exhibited a pattern and practice of failure to respond to RESPA Notices of Error.

75.    The failure of the Defendant to correct the Notices of Error in this case is the manner in which Roundpoint routinely does business and is the pattern and practice of Roundpoint to ignore this type of Regulation X Notice of Error.

76.    On or about November 10, 2017, the Plaintiff sent a written notice of error to the Defendant that included Defendant that included the name of the borrower, the identity of the account, the property description and stated the information requested. This request was made pursuant to 12 CFR § 1024.36(a).

77.    The Notice of Error was mailed by certified mail, return receipt requested, having an article number 9407110898765002108776. The Notice was mailed to the address noticed by the Defendant on its website as the designated address for sending a Notice of Error as provided for by 12 CFR § 1024.35.

78.    The Notice was received by the Defendant on December 9, 2017.

79.    The Plaintiff's Notice of Error referenced Defendant's failure to provide to the Plaintiff within ten business days of receipt of a Request for Information the following information:

1.    The identity of and address for the current owner of the mortgage loan identified herein.

2.    The identity of and address for the master servicer of the mortgage loan identified herein.

3.    The identity of and address for the current servicer of the mortgage loan identified herein.

80.    Under 12 CFR 1024.35 the Notice of Error had to be responded to by the Defendant within ten (10) business days of the date of the receipt of the Request.  The Regulations provide that in computing this time period public holidays, Saturdays and Sundays are excluded.  As a result, in this case, the written response was due no later than December 22, 2017.

81.    Defendant did not respond to the Notice of Error within ten days or at all.  At now time has the Defendant provided the information requested.

82.    The Defendant in this case has exhibited a pattern and practice of failing to comply with the Regulations as it failed to respond to or correct the error as indicated in this complaint.

83.    As a result of this lack of compliance by the Defendant, Roundpoint is liable to Plaintiff for actual damages, statutory damages, costs and attorney's fees for failure to correct the error.

84.    The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error:

a.    He has incurred costs for gasoline to visit his attorney on at least five occasions, driving to his attorney's office for five round trips totaling 17.8miles. The IRS standard mileage allowance provides for .56 per mile.

b.    He has had to use his cell phone to call and receive calls from his attorney. These calls are charged to him pursuant to him for cell phone usage and monthly fees.

c.    Plaintiff has used electricity to recharge his cell phone for calls when he spoke with his attorney.

d.    He has incurred attorney fees and costs for the prosecution of this action.

e.    He has incurred mailing, paper and postage costs for the mailing and transmittal of this Notice of Error.

19

85.    The Plaintiff has demonstrated through the failure of the Defendant to correct any of the Notices of Error in this case that the Defendant has exhibited a pattern and practice of failure to respond to RESPA Notices of Error.

86.    The failure of the Defendant to correct the Notices of Error in this case establish that the pattern and practice of Roundpoint to ignore this type of Regulation X Notice of Error.


WHEREFORE, Plaintiff demands judgment for actual damages plus

statutory damages of $2,000.00 per violation for each of the enumerated

regulation X violations, plus attorney fees and costs.


                                         DAVID CURTIS
                                         By his Attorney

February 5, 2018

                                         /s/ John B. Ennis
                                         JOHN B. ENNIS, ESQ. #2135
                                         1200 Reservoir Avenue
                                         Cranston, RI 02920
                                         (401) 943-9230
                                         Jbelaw75@gmail.com


## COUNT IV

**BREACH OF CONTRACT AND FAILURE TO COMPLY WITH CONDITIONS PRECEDENT TO EXERCISE THE STATUTORY POWER OF SALE BY NOT COMPLYING WITH THE REGULATIONS OF THE SECERTARY OF HOUSING AND URBAN DEVELOPMENT WHICH APPLY TO PLAINTIFF'S FHA MORTGAGE**

87.    Paragraphs 1-86 are incorporated by reference.

88.    Plaintiff's FHA mortgage incorporated the HUD regulations, which required a face to face meeting and advising Plaintiff of all loss mitigation options before sending the Plaintiff a default and acceleration notice.

89.    There was no compliance with the HUD Regulations to exercise the statutory power of sale as indicated above.

90.    Roundpoint did not comply with the HUD regulations and did not thus provide Plaintiff the opportunity to have a face to face meeting, prior to declaraing default and accelerating the mortgage loan.

91.    Roundpoint did not comply with the HUD regulations and did not provide the Plaintiff with  all loss mitigation options, prior to declaraing default and accelerating the mortgage loan.

92.    No default letter was sent to Plaintiff after a Face to Face meeting and after Roundpoint had explained to Plaintiff all loss mitigation options available to the Plaintiff as required by the HUD regulations.

93.    Due to this failure to comply with the HUD Regulations, no entity was contractually authorized to exercise the statutory power of sale and foreclose on the Plaintiff's mortgage. This action constituted a breach of contract, resulting in damages to the Plaintiff.

94.    As a result of the improper and invalid attempt to exercise of the statutory power of sale and a purported  foreclosure sale due to the failure to comply with the HUD regulations, Plaintiff's  mortgage loan account was charged fees and costs and expenses for certified mail, advertising costs, legal fees, auctioneer costs and other charges which were reflected in monthly statements from Roundpoint.

95.    Plaintiff has incurred damages to hire an attorney, in regard to the improper action of Roundpoint. in sending a Notice of Foreclosure sale and seeking to conduct a sale without having complied with the HUD regulations. He has also incurred emotional injuries and damages due to the improper threat to foreclose on his home without complying with the terms of the mortgage.

96.    Plaintiff has incurred legal fees for the prosecution of this action as a result of the breach of contract by Embrace and Roundpoint. The actions of

21

Embrace and Roundpoint were a breach of the covenant off good faith and dealing and were wanton and reckless, warranting the imposition of punitive damages.

WHEREFORE, Plaintiff demands Judgment against Embrace and Roundpoint for compensatory damages and punitive damages arising from the breach of contract by Embrace along with legal fees and costs and legal fees pursuant to R.I.G.L.§ 9-1-45 for breach of contract.

February 5, 2018

DAVID CURTIS
By his Attorney

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, RI 02920
(401) 943-9230
Jbelaw75@gmail.com

## COUNT V

## CLAIM FOR INJUNCTIVE RELIEFAND A PRELIMINARY AND PERMANENT INJUNCTION

97. Paragraphs 1-96 are incorporated by reference.

98. Plaintiff will be irreparably harmed if Defendant is allowed to exercise the statutory power of sale without complying with the HUD regulations and causes the sale of the Plaintiff's home.

99. Plaintiff has a substantial likelihood of success in the pending action, would otherwise suffer irreparable harm and can claim the greater hardship in the absence of an order, which will not disserve the public interest if imposed.

100. The failure of the Defendant to comply with the HUD regulations renders void any attempt to commence the alleged foreclosure by

Statutory Power of Sale, without having the statutory ability to conduct this foreclosure.

101.    Plaintiff lives in this property, as his residence.

102.    These facts demonstrate that Plaintiffs has a substantial likelihood of success. Likewise a foreclosure of Plaintiff's property by a party not entitled to foreclose on the property will cause Plaintiff irreparable harm, which hardship is greater than any hardship, which may be claimed by defendants.

103. Such relief sought by Plaintiff will not disserve the public interest if imposed.

104. Since there has been no compliance with the HUD regulations requiring a Face to Face meeting and an explanation of all loss mitigation options as a prerequisite to the declaration of default, any foreclosure will be void as Plaintiff was not provided a face to face meeting or any loss mitigation options as required by the HUD Regulations.

105.    Plaintiff has incurred actual damages as the result of the conduct of the Defendants in not complying with the provisions of the mortgage. His mortgage loan account has been charged legal fees and expenses for postage and advertising for a foreclosure sale without providing for a face to face meeting and being advised of all HUD regulations as required.

106.    Plaintiff has incurred legal fees and expenses due to the conduct of the Defendants in not complying with the provisions of the HUD regulations.

WHEREFORE, Plaintiff demands that this Court:

a.  Declare that all actions of the Defendants in attempting to foreclose on the Plaintiff's property, without complying with the provisions of the HUD regulations incorporated into the terms of the mortgage are void.

b.  Declare that the Plaintiff is entitled to a face to face meeting and explanation of all loss mitigation options, prior to the declaration of default.

c.  Grant a Preliminary Injunction Restraining and Enjoining Embrace,

23

Roundpoint and any other entity acting on its behalf from
conducting a foreclosure sale at 105 Quaker Drive, West Warwick,
Rhode Island pending a hearing on a Permanent Injunction

d.     Grant a Temporary Restraining Order and Permanent and
Mandatory Injunction directing Embrace, Roundpoint and any other
entity acting on its behalf.to comply with the HUD Regulations and the
terms of the mortgage and provide the Plaintiff a face to face meeting
and provide all loss mitigation options before attempting to declare the
Plaintiff's mortgage loan in default.


                                        DAVID CURTIS
                                        By his Attorney

February 5, 2018

                                        /s/ John B. Ennis
                                        JOHN B. ENNIS, ESQ. #2135
                                        1200 Reservoir Avenue
                                        Cranston, RI 02920
                                        (401) 943-9230
                                        Jbelaw75@gmail.com


## COUNT VI
**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE TRUTH IN
LENDING ACT BY EMBRACE'S FAILURE TO SEND THE PLAINTIFF A
MONTHLY MORTGAGE STATEMENT EACH MONTH PURSUANT TO
THE PROVISIONS OF 12 C.F.R. 1026.41 AND 15 U.S.C. 1638**

107.   Paragraphs 1-106 are incorporated by reference.

108.   This is an action for damages brought by the Plaintiff, who is a
consumer, for Embrace's violations of the Truth in Lending Act, 15 U.S.C. §1601
et seq. ("TILA").

109.   Specifically, Plaintiff seeks the remedies provided in TILA for
Defendants' failure to send the Plaintiff monthly mortgage statements as required
by 15 U.S.C. §§ 1638 and 12 C.F.R. 1026.41 respectively.

Case Number: PC-2018-0618
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 25 of 80 PageID #: 28

110.   This Court has jurisdiction pursuant to 15 U.S.C. §1640 to provide private remedies for failure to respond to provide a borrower monthly statements. 15 U.S.C. § 1640 provides for statutory damages of the type alleged in this Complaint to a range of not less than $400.00 nor greater than $4,000.00. Jurisdiction is further conferred on this Court by 15 U.S.C. §1640(e).

111.   The Defendant, Roundpoint, is a corporation that services residential mortgage loans. Roundpoint claims to be the servicer of the mortgage loan, which is the subject of this complaint

112.   Embrace claims to be the owner of the mortgage note and mortgage loan.

113.   The mortgage loan is a "federally related mortgage loan" as defined in 12 U.S.C. § 2602(1).

114.   Plaintiff has not been sent a monthly statement in compliance with 12 C.F.R. 1026.41 since February 5, 2017 and continues to receive inaccurate statements on an ongoing basis.

115.   Pursuant to 12 C.F.R. 1026.41, the loan servicer on behalf of the creditor, Embrace was required to send the Plaintiff a monthly mortgage statement that provides the following information:

**(d)** *Content and layout of the periodic statement.* The periodic statement required by this section shall include:
**(1)** *Amount due.* Grouped together in close proximity to each other and located at the top of the first page of the statement:
**(i)** The payment due date;
**(ii)** The amount of any late payment fee, and the date on which that fee will be imposed if payment has not been received; and
**(iii)** The amount due, shown more prominently than other disclosures on the page and, if the transaction has multiple payment options, the amount due under each of the payment options.
**(2)** *Explanation of amount due.* The following items, grouped together in close proximity to each other and located on the first page of the statement:
**(i)** The monthly payment amount, including a breakdown showing how much, if any, will be applied to principal, interest, and escrow and, if a mortgage loan has multiple payment options, a breakdown of each of the payment options along with

information on whether the principal balance will increase, decrease, or stay the same for each option listed;

**(ii)** The total sum of any fees or charges imposed since the last statement; and

**(iii)** Any payment amount past due.

**(3)** *Past Payment Breakdown.* The following items, grouped together in close proximity to each other and located on the first page of the statement:

**(i)** The total of all payments received since the last statement, including a breakdown showing the amount, if any, that was applied to principal, interest, escrow, fees and charges, and the amount, if any, sent to any suspense or unapplied funds account; and

**(ii)** The total of all payments received since the beginning of the current calendar year, including a breakdown of that total showing the amount, if any, that was applied to principal, interest, escrow, fees and charges, and the amount, if any, currently held in any suspense or unapplied funds account.

**(4)** *Transaction activity.* A list of all the transaction activity that occurred since the last statement. For purposes of this paragraph (d)(4), *transaction activity* means any activity that causes a credit or debit to the amount currently due. This list must include the date of the transaction, a brief description of the transaction, and the amount of the transaction for each activity on the list.

**(5)** *Partial payment information.* If a statement reflects a partial payment that was placed in a suspense or unapplied funds account, information explaining what must be done for the funds to be applied. The information must be on the front page of the statement or, alternatively, may be included on a separate page enclosed with the periodic statement or in a separate letter.

**(6)** *Contact information.* A toll-free telephone number and, if applicable, an electronic mailing address that may be used by the consumer to obtain information about the consumer's account, located on the front page of the statement.

**(7)** *Account information.* The following information:

**(i)** The amount of the outstanding principal balance;

**(ii)** The current interest rate in effect for the mortgage loan;

**(iii)** The date after which the interest rate may next change;

**(iv)** The existence of any prepayment penalty, as defined in§ 1026.32(b)(6)(i), that may be charged;

**(v)** The Web site to access either the Bureau list or the HUD list of homeownership counselors and counseling organizations and the HUD toll-free telephone number to access contact information for homeownership counselors or counseling organizations; and

**(8)** *Delinquency information.* If the consumer is more than 45 days delinquent, the following items, grouped together in close proximity to each other and located

on the first page of the statement or, alternatively, on a separate page enclosed with the periodic statement or in a separate letter:

**(i)** The date on which the consumer became delinquent;

**(ii)** A notification of possible risks, such as foreclosure, and expenses, that may be incurred if the delinquency is not cured;

**(iii)** An account history showing, for the previous six months or the period since the last time the account was current, whichever is shorter, the amount remaining past due from each billing cycle or, if any such payment was fully paid, the date on which it was credited as fully paid;

**(iv)** A notice indicating any loss mitigation program to which the consumer has agreed, if applicable;

**(v)** A notice of whether the servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, if applicable;

**(vi)** The total payment amount needed to bring the account current; and

**(vii)** A reference to the homeownership counselor information disclosed pursuant to paragraph (d)(7)(v) of this section.

116. None of these statements have been sent to the Plaintiff, in conformity with Regulation Z since February 5, 2017.

117. The Plaintiff's mortgage loan account has not had accurate amounts for principal, interest and escrow on each statement since February 5, 2017.

118. Since the statement which was sent for July, 2017, each periodic statement has also included improper fees for undocumented and unnecessary preservation charges, which were in fact overpriced and were not actually paid to the vendor in the amount of the invoices submitted for these unnecessary services.

119. Since the statement for August, 2017 each statement has also included improperly charged fees for legal fees and foreclosure related costs for mailing and other charges. These charges were inappropriate because the HUD regulations were not complied with and also due to the fact that pursuant to 12 C.F.R. 1024.41, the loan servicer was not authorized to take the first action for foreclosure prior to the mortgage loan being 120 days in default.

120. As a result of this failure to comply with 12 C.F.R. 1026.41 and TILA, Defendant, Embrace is liable for actual damages and statutory damages of up to $4,000.00 for each of the twelve statements, which were not accurate and not in conformity with 12 C.F.R. 1026.41 and TILA.

121. The Plaintiff has incurred actual damages, costs and legal fees in regard to this action relating to this Notice of Error:

a.    He has incurred costs for gasoline to visit his attorney on at least five occasions, driving to his attorney's office for five round trips totaling 17.8miles. The IRS standard mileage allowance provides for .56 per mile.

b.    He has had to use his cell phone to call and receive calls from his attorney. These calls are charged to him pursuant to him for cell phone usage and monthly fees.

c.    Plaintiff has used electricity to recharge his cell phone for calls when he spoke with his attorney.

d.    He has incurred attorney fees and costs for the prosecution of this action.

e.    He has incurred mailing, paper and postage costs for the mailing and transmittal of this Notice of Error.

f.    His mortgage loan account has been charged unreasonable fees and costs for uncorroborated and unreasonable and unnecessary property inspections and improper legal fees and costs. Such costs have rendered a modification of the mortgage loan more expensive to the Plaintiff.

WHERFORE, Plaintiff demands Judgment against Embrace for statutory damages of at least $4,000.00, for each failure to send a monthly mortgage statement in conformity with TILA since February 5, 2011 and thereafter plus actual damages, plus attorney fees and costs and all other just and proper relief.

DAVID CURTIS
By his Attorney

February 5, 2018

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, RI 02920
(401) 943-9230
Jbelaw75@gmail.com

29

Case Number: KC-2018-0018
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 30 of 80 PageID #: 33

# EXHIBIT A

Return To:

ANTHONY W. COFONE
1140 RESERVOIR AVE
CRANSTON, RI 02920-

Prepared By:

Odalis Jimenez
25 Enterprise Center
Newport, RI 02842

---

# Mortgage

| FHA Case No. |
| --- |
| 451-1495952-703 |

MIN: 100049700012579138

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.

(A) "Security Instrument" means this document, which is dated **April 29, 2016**          , together with all Riders to this document.

(B) "Borrower" is **David C Curtis**

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

---

2016-2839556
FHA Mortgage With MERS-RI
Bankers SystemsTM VMP ®
Wolters Kluwer Financial Services

100049700012579138

4/27/2016 9:04 AM

2593
9/30/2014
VMP4N(RI) (1506)
Page 1 of 17

*DCC*

Case Number: KC-2018-0018
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 32 of 80 PageID #: 35

(D) "Lender" is Embrace Home Loans, Inc.

Lender is a Corporation
organized and existing under the laws of State of Rhode Island
Lender's address is 25 Enterprise Center, Newport, RI 02842

(E) "Note" means the promissory note signed by Borrower and dated April 29, 2016       . The Note states that Borrower owes Lender two hundred eighty-four thousand nine and 00/100

Dollars (U.S. $ 284,009.00       ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than May 1, 2046       .

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider      ☐ Planned Unit Development Rider
☐ Other
☐ Rehabilitation Loan Rider

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

2016-2639655
FHA Mortgage With MERS-RI
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

1000497000125791136

4/27/2016 9:04 AM

2593
9/30/2014
VMP4N(RI)(1500)
Page 2 of 17

Case Number: KC-2018-0018
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 33 of 80 PageID #: 36

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors of MERS, with Mortgage Covenants upon the Statutory Condition and with Power of Sale, the following described property located in the

|  |  |  |
|---|---|---|
| **Town** | of | **West Warwick** |
| *(Type of Recording Jurisdiction)* | | *(Name of Recording Jurisdiction)* |

**See Attached Exhibit A**

**Parcel ID Number: AP 29 Lot 192**   which currently has the address of

**105 Quaker Drive**   *(Street)*

**West Warwick**   *(City)*, Rhode Island **02893**   *(Zip Code)*

**("Property Address"):**

2018-2839555
FHA Mortgage With MERS-RI
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

1000497000125079138

4/27/2018 9:04 AM

2593
9/30/2014
VMP4N(RI)(1506)
Page 3 of 17

Case Number: KC-2018-0013
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 34 of 80 PageID #: 37

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

   Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as expressly stated otherwise in this Security Instrument or the Note, all payments accepted and applied by Lender shall be applied in the following order of priority:

2016-2839555                                    100049700012579138                              2593
FHA Mortgage With MERS-RI                                                                   9/30/2014
Bankers Systems™ VMP ®                                                                   VMP4N(RI) (1506)
Wolters Kluwer Financial Services              4/27/2016 9:04 AM          -                 Page 4 of 17

Case Number: KC-2048-0018
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 35 of 80 PageID #: 38

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing

2016-2030565
FHA Mortgage With MERS-IN
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

1000497000126791138

4/27/2016 9:04 AM

2593
9/30/2014
VMPN(IN) (1506)
Page 5 of 17

the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

2016-2800555
FHA Mortgage With MERS-RI
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services          10004970001257913B          4/27/2016 9:04 AM

2593
9/30/2014
VMP4N(RI) (1506)
Page 6 of 17

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

2016-280D555
FHA Mortgage With MERS-IB
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services                    1000497000125791138

4/27/2016 9:04 AM

2593
9/30/2014
VMP4N(R)(1506)
Page 7 of 17

Case Number: PC-2018-1018
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 38 of 80 PageID #: 41

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes,

2016-2630555
FHA Mortgage With MERS-RI
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

1000467000125791138

4/27/2016 9:04 AM

2503
9/30/2014
VMP4N(RI) (1506)
Page 8 of 17

Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 39 of 80 PageID #: 42

but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless

2016-2839565
FHA Mortgage With MERS-RI
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

10004670001257913B

4/27/2016 9:04 AM

2693
9/30/2014
VMP4N(RI) (1506)
Page 9 of 17

Case Number: KC-2018-0013
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Case 1:18-cv-00057-JJM-PAS    Document 1-1    Filed 02/08/18    Page 40 of 80 PageID #: 43

Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release

2316-2839555
FHA Mortgage With MERS-RI
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

1000497000012579136

4/27/2016 9:04 AM

2899
9/30/2014
VMP4N(RI) (1506)
Page 10 of 17

in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Lender agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding; (ii) reinstatement will preclude foreclosure on different grounds in the future; or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

2016-2839555
FHA Mortgage With MERS-IS
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

1000049700012579138

4/27/2016 9:04 AM

2503
9/30/2014
VMP4N(R) (1506)
Page 12 of 17

Case Number: KC-2018-0018
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 43 of 80 PageID #: 46

19. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this Section. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

20. **Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of

2016-2830555
FHA Mortgage With MERS-RI
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services        4/27/2016 9:04 AM        1000497000125791136        2593
9/30/2014
VMP4N(RI) (1506)
Page 13 of 17

Case Number: KC-2018-0013
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 44 of 80 PageID #: 47

small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 14. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

2016-2839565
FHA Mortgage With MERS-RI
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

10004970001257913B

4/27/2016 9:04 AM

2593
9/30/2014
VMP4N(RI) (1506)
Page 14 of 17



Case Number: KG-2018-0013
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 45 of 80 PageID #: 48

24. **No Outstanding Automatic Orders in Domestic Relations Cases.** Borrower hereby represents and warrants to Lender that either (a) there is no outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against any Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation or (b) there is an outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against a Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation, and the other party that is subject to such order has consented to, or the court which issued the automatic order has issued another order authorizing, such Borrower's execution of the Note and this Security Instrument.

25. **Homestead Estate.** If Borrower heretofore has acquired or hereafter acquires an estate of homestead in the Property, Borrower hereby agrees that such homestead estate is waived to the extent of this Security Instrument and the amount due under the Note and to the extent of all renewals, extensions and modifications of this Security Instrument or the Note, and that said homestead estate is subject to all of the rights of Lender under this Security Instrument and the Note and all renewals, extensions and modifications of this Security Instrument and the Note, and is subordinate to the lien evidenced by this Security Instrument, and all renewals, extensions and modifications of this Security Instrument. Furthermore, Borrower hereby waives the benefits of any homestead or similar laws or regulations that may otherwise be applicable from time to time.

26. **Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

2016-2830555
FHA Mortgage With MERS-RI
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

1000497000125791 38

4/27/2016 9:04 AM

2593
9/30/2014
VMP4N(R) (1506)
Page 15 of 17

Case Number KC-2018-0013
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 46 of 80 PageID #: 49

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
David C Curtis                          -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

☐ Refer to the attached *Signature Addendum* for additional parties and signatures.

2016-2639555
FHA Mortgage With MERS-RI
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

1000497000125791 38

4/27/2016 9:04 AM

2503
9/30/2014
VMP4N(RI) (1506)
Page 16 of 17

Case Number KC-2018-0013
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 47 of 80 PageID #: 50

**Acknowledgment**
State of RI
County of **Providence**
On **April 29, 2016**      , in said County, before me personally appeared **David C Curtis**

each and all to me known and known to me to be the person(s) executing the foregoing instrument and
acknowledged said execution to be his/her/their free act and deed.

*Notary Public*

*My commission expires:*

ANTHONY W. COFONE
NOTARY PUBLIC
STATE OF RHODE ISLAND
MY COMMISSION EXPIRES 6-18-2017

ANTHONY W. COFONE
NOTARY PUBLIC
STATE OF RHODE ISLAND
MY COMMISSION EXPIRES 6-18-2017

**Loan Origination Organization:** Embrace Home Loans, Inc.
**NMLS ID:** 2184
**Loan Originator:** Jake J. McKay
**NMLS ID:** 388731

2016-2839555
FHA Mortgage With MERS-RI
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

100040700012579138

4/27/2018 9:04 AM

2593
9/30/2014
VMP4N(RI) (1506)
Page 17 of 17

Case Number KC-2018-0018
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 48 of 80 PageID #: 51

Exhibit "A"

Parcel I

That certain lot or parcel of land with all buildings and improvements thereon, situated on the Westerly side of Quaker Drive, Crompton, in the Town of West Warwick, County of Kent, and State of Rhode Island, laid out and designated as Lot Number 12 (twelve) on that certain plat entitled "Section B Quaker Estates in the Town of West Warwick, R.I. Belonging to Zetts Construction Co. Inc. By Boyer Engineering Co. Inc. Sept. 1966", which plat is recorded in the Land Records of the said Town of West Warwick in Plat Book 1 at page 137 and (copy) on plat card numbered 223.

Together with full right to use and travel upon Quaker Drive and Shady Hill Drive from Cowesett Avenue, for all purposes for which public access or highways are customarily used, as laid out and shown on said above mentioned plat.

Parcel II

That certain lot or parcel of land with any improvements thereon, located Westerly of Quaker Drive, Compton, in the Town of West Warwick, County of Kent and State of Rhode Island, bounded and described as follows:

Beginning at a point in the Easterly line of premises North of Zetts Construction Co. Inc., said point being the Southwesterly corner of grantees' premises and the Southwesterly corner of Lot Numbered 12 (twelve) on a certain recorded plat entitled, "Section B Quaker Estates in the Town of West Warwick, R.I. Belonging to Zetts Construction Co. Inc. By Boyer Engineering Co. Inc. Sept 1966", which plat is recorded in the Land Records of the said Town of West Warwick in Plat Book 1 at page 137 and (copy) on plat card numbered 223; thence running Northerly bounded Easterly by Lot 12 (twelve) one hundred ten (110) feet to the Northwesterly corner of said Lot Numbered 12 (twelve), said point being the Southwesterly corner of premises by John C. Zaborski et ux; thence turning an interior angle of 90 degrees and running Westerly bounded Northerly by land now or formerly of this grantor twenty-five (25) feet to a point; thence turning an interior angle of 90 degrees and running Southerly bounded Westerly by grantor's land one hundred ten (110) feet to a point; thence turning an interior angle of 90 degrees and running Easterly bounded Southerly by grantor's land twenty-five (25) feet to the point or place of beginning, said point being the Northwesterly corner of Lot Numbered 11 (eleven) on said above mentioned plat, being premises of Lyonel K. Leaver et ux; said last described line creating an interior angle of 90 degrees with the first above described line; containing 2,750 square feet of land, more or less.

Being the same premises conveyed to Rick Ramdathsingh by deed of Thomas A. DiTraglia and Danielle M. DiTraglia, dated October 24, 2008 and recorded October 24, 2008 in Book 1971, Page 1 of the Land Evidence Records of the Town of West Warwick.

Property Address:
105 Quaker Drive
West Warwick, RI
AP 29 Lot 192

Case Number: KC-2018-0013
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 49 of 80 PageID #: 52

# EXHIBIT B

Legal Information Institute [LII]
OPEN ACCESS TO LAW SINCE 1992

# 12 CFR 1024.41 - Loss mitigation procedures.

### § 1024.41 Loss mitigation procedures.

**(a)** *Enforcement and limitations.* A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA ( 12 U.S.C. 2605(f)). Nothing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option. Nothing in § 1024.41 should be construed to create a right for a borrower to enforce the terms of any agreement between a servicer and the owner or assignee of a mortgage loan, including with respect to the evaluation for, or offer of, any loss mitigation option or to eliminate any such right that may exist pursuant to applicable law.

**(b)** *Receipt of a loss mitigation application -*

**(1)** *Complete loss mitigation application.* A complete loss mitigation application means an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower. A servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application.

**(2)** *Review of loss mitigation application submission -*

**(i)** *Requirements.* If a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall:

**(A)** Promptly upon receipt of a loss mitigation application, review the loss mitigation application to determine if the loss mitigation application is complete; and

**(B)** Notify the borrower in writing within 5 days (excluding legal public holi days, Satur days, and Sun days) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete. If a loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date pursuant to paragraph (b)(2)(ii) of this section. The notice to the borrower shall include a statement that the borrower should consider contacting servicers of any other mortgage loans secured by the same property to discuss available loss mitigation options.

**(ii)** *Time period disclosure.* The notice required pursuant to paragraph (b)(2)(i)(B) of this section must include a reasonable date by which the borrower should submit the documents and information necessary to make the loss mitigation application complete.

§ 1024.41 Loss mitigation procedures. | US Law | LII / Legal Information Institute

**(3) Determining protections.** To the extent a determination of whether protections under this section apply to a borrower is made on the basis of the number of days between when a complete loss mitigation application is received and when a foreclosure sale occurs, such determination shall be made as of the date a complete loss mitigation application is received.

(c) *Evaluation of loss mitigation applications -*

(1) *Complete loss mitigation application.* Except as provided in paragraph (c)(4)(ii) of this section, if a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving the complete loss mitigation application, a servicer shall:

(i) Evaluate the borrower for all loss mitigation options available to the borrower; and

(ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section.

(2) *Incomplete loss mitigation application evaluation -*

(i) *In general.* Except as set forth in paragraphs (c)(2)(ii) and (iii) of this section, a servicer shall not evade the requirement to evaluate a complete loss mitigation application for all loss mitigation options available to the borrower by offering a loss mitigation option based upon an evaluation of any information provided by a borrower in connection with an incomplete loss mitigation application.

(ii) *Reasonable time.* Notwithstanding paragraph (c)(2)(i) of this section, if a servicer has exercised reasonable diligence in obtaining documents and information to complete a loss mitigation application, but a loss mitigation application remains incomplete for a significant period of time under the circumstances without further progress by a borrower to make the loss mitigation application complete, a servicer may, in its discretion, evaluate an incomplete loss mitigation application and offer a borrower a loss mitigation option. Any such evaluation and offer is not subject to the requirements of this section and shall not constitute an evaluation of a single complete loss mitigation application for purposes of paragraph (i) of this section.

(iii) *Short-term loss mitigation options.* Notwithstanding paragraph (c)(2)(i) of this section, a servicer may offer a short-term payment forbearance program or a short-term repayment plan to a borrower based upon an evaluation of an incomplete loss mitigation application. Promptly after offering a payment forbearance program or a repayment plan under this paragraph (c)(2)(iii), unless the borrower has rejected the offer, the servicer must provide the borrower a written notice stating the specific payment terms and duration of the program or plan, that the servicer offered the program or plan based on

Case Number KC-2018-0013
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51 AM
Envelope: 1396186
Reviewer: Lindsay Z.

an evaluation of an incomplete application, that other loss mitigation options may be available, and that the borrower has the option to submit a complete loss mitigation application to receive an evaluation for all loss mitigation options available to the borrower regardless of whether the borrower accepts the program or plan. A servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, and shall not move for foreclosure judgment or order of sale or conduct a foreclosure sale, if a borrower is performing pursuant to the terms of a payment forbearance program or repayment plan offered pursuant to this paragraph (c)(2)(iii). A servicer may offer a short-term payment forbearance program in conjunction with a short-term repayment plan pursuant to this paragraph (c)(2)(iii).

(iv) *Facially complete application.* A loss mitigation application shall be considered facially complete when a borrower submits all the missing documents and information as stated in the notice required under paragraph (b)(2)(i)(B) of this section, when no additional information is requested in such notice, or once the servicer is required to provide the borrower a written notice pursuant to paragraph (c)(3)(i) of this section. If the servicer later discovers that additional information or corrections to a previously submitted document are required to complete the application, the servicer must promptly request the missing information or corrected documents and treat the application as complete for the purposes of paragraphs (f)(2) and (g) of this section until the borrower is given a reasonable opportunity to complete the application. If the borrower completes the application within this period, the application shall be considered complete as of the date it first became facially complete, for the purposes of paragraphs (d), (e), (f)(2), (g), and (h) of this section, and as of the date the application was actually complete for the purposes of this paragraph (c). A servicer that complies with this paragraph (c)(2)(iv) will be deemed to have fulfilled its obligation to provide an accurate notice under paragraph (b)(2)(i)(B) of this section.

(3) *Notice of complete application.*

(i) Except as provided in paragraph (c)(3)(ii) of this section, within 5 days (excluding legal public holi days, Satur days, and Sun days) after receiving a borrower's complete loss mitigation application, a servicer shall provide the borrower a written notice that sets forth the following information:

(A) That the loss mitigation application is complete;

(B) The date the servicer received the complete application;

(C) That the servicer expects to complete its evaluation within 30 days of the date it received the complete application;

(D) That the borrower is entitled to certain foreclosure protections because the servicer has received the complete application, and, as applicable, either:

(1) If the servicer has not made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, that the servicer cannot make the first notice or filing required to commence or initiate the foreclosure process under applicable law before evaluating the borrower's complete application; or

Case Number KC-2018-0013
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

§ 1024.41 Loss mitigation procedures. | US Law | LII / Legal Information Institute

**(2)** If the servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, that the servicer has begun the foreclosure process, and that the servicer cannot conduct a foreclosure sale before evaluating the borrower's complete application;

**(E)** That the servicer may need additional information at a later date to evaluate the application, in which case the servicer will request that information from the borrower and give the borrower a reasonable opportunity to submit it, the evaluation process may take longer, and the foreclosure protections could end if the servicer does not receive the information as requested; and

**(F)** That the borrower may be entitled to additional protections under State or Federal law.

**(ii)** A servicer is not required to provide a notice pursuant to paragraph (c)(3)(i) of this section if:

**(A)** The servicer has already provided the borrower a notice under paragraph (b)(2)(i)(B) of this section informing the borrower that the application is complete and the servicer has not subsequently requested additional information or a corrected version of a previously submitted document from the borrower pursuant to paragraph (c)(2)(iv) of this section;

**(B)** The application was not complete or facially complete more than 37 days before a foreclosure sale; or

**(C)** The servicer has already provided the borrower a notice regarding the application under paragraph (c)(1)(ii) of this section.

**(4)** *Information not in the borrower's control -*

**(i)** *Reasonable diligence.* If a servicer requires documents or information not in the borrower's control to determine which loss mitigation options, if any, it will offer to the borrower, the servicer must exercise reasonable diligence in obtaining such documents or information.

**(ii)** *Effect in case of delay.* (A)(*1*) Except as provided in paragraph (c)(4)(ii)(A)(*2*) of this section, a servicer must not deny a complete loss mitigation application solely because the servicer lacks required documents or information not in the borrower's control.

**(2)** If a servicer has exercised reasonable diligence to obtain required documents or information from a party other than the borrower or the servicer, but the servicer has been unable to obtain such documents or information for a significant period of time following the 30-day period identified in paragraph (c)(1) of this section, and the servicer, in accordance with applicable requirements established by the owner or assignee of the borrower's mortgage loan, is unable to determine which loss mitigation options, if any, it will offer the borrower without such documents or information, the servicer may deny the application and provide the borrower with a written notice in accordance with paragraph (c)(1)(ii) of this section. When providing

the written notice in accordance with paragraph (c)(1)(ii) of this section, the servicer must also provide the borrower with a copy of the written notice required by paragraph (c)(4)(ii)(B) of this section.

(B) If a servicer is unable to make a determination within the 30-day period identified in paragraph (c)(1) of this section as to which loss mitigation options, if any, it will offer to the borrower because the servicer lacks required documents or information from a party other than the borrower or the servicer, the servicer must, within such 30-day period or promptly thereafter, provide the borrower a written notice, informing the borrower:

(1) That the servicer has not received documents or information not in the borrower's control that the servicer requires to determine which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage;

(2) Of the specific documents or information that the servicer lacks;

(3) That the servicer has requested such documents or information; and

(4) That the servicer will complete its evaluation of the borrower for all available loss mitigation options promptly upon receiving the documents or information.

(C) If a servicer must provide a notice required by paragraph (c)(4)(ii)(B) of this section, the servicer must not provide the borrower a written notice pursuant to paragraph (c)(1)(ii) of this section until the servicer receives the required documents or information referenced in paragraph (c)(4)(ii)(B)(2) of this section, except as provided in paragraph (c)(4)(ii)(A)(2) of this section. Upon receiving such required documents or information, the servicer must promptly provide the borrower with the written notice pursuant to paragraph (c)(1)(ii) of this section.

(d) *Denial of loan modification options.* If a borrower's complete loss mitigation application is denied for any trial or permanent loan modification option available to the borrower pursuant to paragraph (c) of this section, a servicer shall state in the notice sent to the borrower pursuant to paragraph (c)(1)(ii) of this section the specific reason or reasons for the servicer's determination for each such trial or permanent loan modification option and, if applicable, that the borrower was not evaluated on other criteria.

(e) *Borrower response -*

(1) *In general.* Subject to paragraphs (e)(2)(ii) and (iii) of this section, if a complete loss mitigation application is received 90 days or more before a foreclosure sale, a servicer may require that a borrower accept or reject an offer of a loss mitigation option no earlier than 14 days after the servicer provides the offer of a loss mitigation option to the borrower. If a complete loss mitigation application is received less than 90 days before a foreclosure sale, but more than 37 days before a foreclosure sale, a servicer may require that a borrower accept or reject an offer of a loss mitigation option no earlier than 7 days after the servicer provides the offer of a loss mitigation option to the borrower.

(2) *Rejection -*

Case Number: KC-2018-0918
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51 PM
Envelope: 1396186
Reviewer: Lindsay Z.

12 CFR 1024.41 Loss mitigation procedures. | US Law | LII / Legal Information Institute

**(i)** *In general.* Except as set forth in paragraphs (e)(2)(ii) and (iii) of this section, a servicer may deem a borrower that has not accepted an offer of a loss mitigation option within the deadline established pursuant to paragraph (e)(1) of this section to have rejected the offer of a loss mitigation option.

**(ii)** *Trial Loan Modification Plan.* A borrower who does not satisfy the servicer's requirements for accepting a trial loan modification plan, but submits the payments that would be owed pursuant to any such plan within the deadline established pursuant to paragraph (e)(1) of this section, shall be provided a reasonable period of time to fulfill any remaining requirements of the servicer for acceptance of the trial loan modification plan beyond the deadline established pursuant to paragraph (e)(1) of this section.

**(iii)** *Interaction with appeal process.* If a borrower makes an appeal pursuant to paragraph (h) of this section, the borrower's deadline for accepting a loss mitigation option offered pursuant to paragraph (c)(1)(ii) of this section shall be extended until 14 days after the servicer provides the notice required pursuant to paragraph (h)(4) of this section.

**(f)** *Prohibition on foreclosure referral* -

**(1)** *Pre-foreclosure review period.* A servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process unless:

**(i)** A borrower's mortgage loan obligation is more than 120 days delinquent;

**(ii)** The foreclosure is based on a borrower's violation of a due-on-sale clause; or

**(iii)** The servicer is joining the foreclosure action of a superior or subordinate lienholder.

**(2)** *Application received before foreclosure referral.* If a borrower submits a complete loss mitigation application during the pre-foreclosure review period set forth in paragraph (f)(1) of this section or before a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, a servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process unless:

**(i)** The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;

**(ii)** The borrower rejects all loss mitigation options offered by the servicer; or

**(iii)** The borrower fails to perform under an agreement on a loss mitigation option.

**(g)** *Prohibition on foreclosure sale.* If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless:

Case Number: 2018-01818
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:11:47 AM
Envelope: 1396186
Reviewer: Lindsay Z.

1024.41 - Loss mitigation procedures | US Law | LII / Legal Information Institute

(1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;

(2) The borrower rejects all loss mitigation options offered by the servicer; or

(3) The borrower fails to perform under an agreement on a loss mitigation option.

(h) *Appeal process* -

(1) *Appeal process required for loan modification denials.* If a servicer receives a complete loss mitigation application 90 days or more before a foreclosure sale or during the period set forth in paragraph (f) of this section, a servicer shall permit a borrower to appeal the servicer's determination to deny a borrower's loss mitigation application for any trial or permanent loan modification program available to the borrower.

(2) *Deadlines.* A servicer shall permit a borrower to make an appeal within 14 days after the servicer provides the offer of a loss mitigation option to the borrower pursuant to paragraph (c)(1)(ii) of this section.

(3) *Independent evaluation.* An appeal shall be reviewed by different personnel than those responsible for evaluating the borrower's complete loss mitigation application.

(4) *Appeal determination.* Within 30 days of a borrower making an appeal, the servicer shall provide a notice to the borrower stating the servicer's determination of whether the servicer will offer the borrower a loss mitigation option based upon the appeal and, if applicable, how long the borrower has to accept or reject such an offer or a prior offer of a loss mitigation option. A servicer may require that a borrower accept or reject an offer of a loss mitigation option after an appeal no earlier than 14 days after the servicer provides the notice to a borrower. A servicer's determination under this paragraph is not subject to any further appeal.

(i) *Duplicative requests.* A servicer must comply with the requirements of this section for a borrower's loss mitigation application, unless the servicer has previously complied with the requirements of this section for a complete loss mitigation application submitted by the borrower and the borrower has been delinquent at all times since submitting the prior complete application.

(j) *Small servicer requirements.* A small servicer shall be subject to the prohibition on foreclosure referral in paragraph (f)(1) of this section. A small servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process and shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, if a borrower is performing pursuant to the terms of an agreement on a loss mitigation option.

(k) *Servicing transfers* -

(1) *In general* -

Case Number: 08-2018-0018
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51 PM
Envelope: 1396186
Reviewer: Lindsay Z.

1024.41 Loss mitigation procedures. | US Law | LII / Legal Information Institute

**(i) *Timing of compliance.*** Except as provided in paragraphs (k)(2) through (4) of this section, if a transferee servicer acquires the servicing of a mortgage loan for which a loss mitigation application is pending as of the transfer date, the transferee servicer must comply with the requirements of this section for that loss mitigation application within the timeframes that were applicable to the transferor servicer based on the date the transferor servicer received the loss mitigation application. All rights and protections under paragraphs (c) through (h) of this section to which a borrower was entitled before a transfer continue to apply notwithstanding the transfer.

**(ii) *Transfer date defined.*** For purposes of this paragraph (k), the transfer date is the date on which the transferee servicer will begin accepting payments relating to the mortgage loan, as disclosed on the notice of transfer of loan servicing pursuant to § 1024.33(b)(4)(iv).

**(2) *Acknowledgment notices -***

**(i) *Transferee servicer timeframes.*** If a transferee servicer acquires the servicing of a mortgage loan for which the period to provide the notice required by paragraph (b)(2)(i)(B) of this section has not expired as of the transfer date and the transferor servicer has not provided such notice, the transferee servicer must provide the notice within 10 days (excluding legal public holidays, Saturdays, and Sundays) of the transfer date.

**(ii) *Prohibitions.*** A transferee servicer that must provide the notice required by paragraph (b)(2)(i)(B) of this section under this paragraph (k)(2):

**(A)** Shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process until a date that is after the reasonable date disclosed to the borrower pursuant to paragraph (b)(2)(ii) of this section, notwithstanding paragraph (f)(1) of this section. For purposes of paragraph (f)(2) of this section, a borrower who submits a complete loss mitigation application on or before the reasonable date disclosed to the borrower pursuant to paragraph (b)(2)(ii) of this section shall be treated as having done so during the pre-foreclosure review period set forth in paragraph (f)(1) of this section.

**(B)** Shall comply with paragraphs (c), (d), and (g) of this section if the borrower submits a complete loss mitigation application to the transferee or transferor servicer 37 or fewer days before the foreclosure sale but on or before the reasonable date disclosed to the borrower pursuant to paragraph (b)(2)(ii) of this section.

**(3) *Complete loss mitigation applications pending at transfer.*** If a transferee servicer acquires the servicing of a mortgage loan for which a complete loss mitigation application is pending as of the transfer date, the transferee servicer must comply with the applicable requirements of paragraphs (c)(1) and (4) of this section within 30 days of the transfer date.

**(4) *Applications subject to appeal process.*** If a transferee servicer acquires the servicing of a mortgage loan for which an appeal of a transferor servicer's determination pursuant to paragraph (h) of this section has not been resolved by the transferor servicer

Case Number: KC-2018-0013
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:33:07 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Case 1:18-cv-00057-JJM-PAS Document 1-1 Filed 02/08/18 Page 58 of 80 PageID #: 61

§ 1024.41 Loss mitigation procedures. | US Law | LII / Legal Information Institute

transfer date or is timely filed after the transfer date, the transferee servicer must make a determination on the appeal if it is able to do so or, if it is unable to do so, must treat the appeal as a pending complete loss mitigation application.

(i) *Determining appeal.* If a transferee servicer is required under this paragraph (k)(4) to make a determination on an appeal, the transferee servicer must complete the determination and provide the notice required by paragraph (h)(4) of this section within 30 days of the transfer date or 30 days of the date the borrower made the appeal, whichever is later.

(ii) *Servicer unable to determine appeal.* A transferee servicer that is required to treat a borrower's appeal as a pending complete loss mitigation application under this paragraph (k)(4) must comply with the requirements of this section for such application, including evaluating the borrower for all loss mitigation options available to the borrower from the transferee servicer. For purposes of paragraph (c) or (k)(3) of this section, as applicable, such a pending complete loss mitigation application shall be considered complete as of the date the appeal was received by the transferor servicer or the transferee servicer, whichever occurs first. For purposes of paragraphs (e) through (h) of this section, the transferee servicer must treat such a pending complete loss mitigation application as facially complete under paragraph (c)(2)(iv) as of the date it was first facially complete or complete, as applicable, with respect to the transferor servicer.

(5) *Pending loss mitigation offers.* A transfer does not affect a borrower's ability to accept or reject a loss mitigation option offered under paragraph (c) or (h) of this section. If a transferee servicer acquires the servicing of a mortgage loan for which the borrower's time period under paragraph (e) or (h) of this section for accepting or rejecting a loss mitigation option offered by the transferor servicer has not expired as of the transfer date, the transferee servicer must allow the borrower to accept or reject the offer during the unexpired balance of the applicable time period.

[ 78 FR 10876, Feb. 14, 2013, as amended at 78 FR 60437, Oct. 1, 2013; 81 FR 72373, Oct. 19, 2016]


SENNHEISER — Take Your Gaming to the Next Level with Sennheiser — Shop Now ›

About LII

Contact us

Advertise here

Help

Terms of use

Privacy

Case Number: KC-2018-0018
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

1024.41 Dust mitigation procedures | US Law | LII / Legal Information Institute

[ LII ]

Case Number: KC-2018-0018
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 60 of 80 PageID #: 63

# EXHIBIT C

Case Number: KC-2018-0018
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 61 of 80 PageID #: 64



**ROUNDPOINT**
MORTGAGE SERVICING CORPORATION

Sent Via Certified Mail
9314 7100 1170 0926 3844 95

08/25/2017

DAVID CURTIS
105 QUAKER DR
WEST WARWICK, RI 02893

Loan Number:     2003193246
Property Address:  105 QUAKER DR
                   WEST WARWICK, RI 02893

## NOTICE OF DEFAULT AND INTENT TO ACCELERATE

Dear DAVID CURTIS:

RoundPoint Mortgage Servicing Corporation (RoundPoint) is currently servicing your mortgage loan that is secured by the above referenced property. You are hereby formally notified that the mortgage loan associated with the referenced Deed of Trust/Mortgage is in default for failure to pay amounts due.

The loan is due for June 1, 2017 and subsequent payments, plus late charges, fees and costs. As of today, the total delinquency and reinstatement amount is $6,701.19, which consists of the following:

| | | |
|---|---|---|
| Next Payment Due Date: | | 06/01/2017 |
| Current Monthly Payment: | | $2,137.38 |
| Total Monthly Payments Due: | | $6,412.14 |
| Late Charges: | | $259.05 |
| Other Charges: | Uncollected NSF Fees: | $0.00 |
| | Other Fees: | $0.00 |
| | Corporate Advance Balance: | $30.00 |
| | Partial Payment Balance: | -$0.00 |

TOTAL YOU MUST PAY TO CURE DEFAULT:          $6,701.19

**It is possible that after payment of the amounts detailed above there may be other fees still due and owing, including but not limited to other fees, escrow advances or corporate advances that RoundPoint paid on your behalf or advanced to your account.**

This letter is a formal demand to pay $6,701.19. If the default, together with additional payments that subsequently become due, is not cured by 10/01/2017, RoundPoint may take steps to terminate your ownership in the property by a foreclosure proceeding or other action to seize the property.

IF YOU ARE UNABLE TO BRING YOUR ACCOUNT CURRENT, RoundPoint offers consumer assistance programs designed to help resolve delinquencies and avoid FORECLOSURE. These services are provided without cost to our customers. You may be eligible for a loan workout plan or other similar situation. If you would like to learn more about these programs, you may contact the Loss Mitigation Department at 877-426-8805. WE ARE VERY INTERESTED IN ASSISTING YOU.

The default above can be cured by payment of the total delinquency and reinstatement amount plus any additional payments and fees that become due by 10/01/2017.  Note that in addition to the regular monthly



payments, additional charges, costs and fees may become due during the period between today's date and the date the aforementioned payments are due. Please contact our Collection Department at 877-426-8805 to obtain updated payment information.

Please include your loan number and property address with your payment and send to:

RoundPoint Mortgage Servicing Corporation
P.O. Box 19389
Charlotte, NC 28219-9389

You may also make a payment by wire transfer with the following information:

| | |
|---|---|
| Bank: | Bank of America |
| Account: | RoundPoint Mortgage Servicing Corporation |
| ABA: | 026009593 |
| Account No.: | 000655371906 |

If you wish to dispute the delinquency, or if you dispute the calculation amount of the delinquency and reinstatement amount, you may contact us by calling 877-426-8805.

Failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by the Security Instrument and sale of the property. You have the right to reinstate the loan after acceleration, and to bring a court action to assert the non-existence of a default or any other defense to acceleration or foreclosure sale. Failure to respond to this letter may result in the loss of your property. To the extent your obligation has been discharged or is subject to the automatic stay in a bankruptcy case, this notice is for informational purposes only and does not constitute a demand for payment or an attempt to collect a debt as your personal obligation. If you are represented by an attorney, please provide us with the attorney's name, address and telephone number.

For your benefit and assistance, there are government approved homeownership counseling agencies designed to help homeowners avoid losing their homes. To obtain a list of approved counseling agencies, please call 800-569-4287.

This matter is very important. Please give it your immediate attention.

Sincerely,

RoundPoint Mortgage Servicing Corporation
P.O. Box 19409
Charlotte, NC 28219-9409
877-426-8805

(See disclosures on page 3)

Case Number: K3-2018-0018
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Federal law requires us to advise you that RoundPoint Mortgage Servicing Corporation (NMLS ID# 18188) is a debt collector and that this is an attempt to collect a debt. Any information obtained may be used for that purpose. To the extent your obligation has been discharged or is subject to the automatic stay in a bankruptcy proceeding, this notice is for informational purposes only and does not constitute a demand for payment or an attempt to collect indebtedness as your personal obligation. If you are represented by an attorney, please provide us with the attorney's name, address and telephone number.

Notice to Customers: RoundPoint Mortgage Servicing Corporation may report information about your mortgage account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.



Case Number: KC-2018-0013
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 64 of 80 PageID #: 67

# EXHIBIT D

Case Number: KC-2018-0018
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 65 of 80 PageID #: 68



**ROUNDPOINT**
MORTGAGE SERVICING CORPORATION

8/25/2017

DAVID CURTIS

105 QUAKER DR
WEST WARWICK, RI 02893

**Loan Number:**
2003193246
**Property Address:**
105 QUAKER DR
WEST WARWICK, RI 02893

Dear DAVID CURTIS:

The enclosed notice is provided to you to inform you of the protections provided by R.I. Gen. Laws § 34-27-3.2 of The Rhode Island Mortgage Foreclosure and Sale Act.

Sincerely,

RoundPoint Mortgage Servicing Corporation

Federal law requires us to advise you that RoundPoint Mortgage Servicing Corporation (NMLS ID# 18188) is a debt collector and that this is an attempt to collect a debt. Any information obtained may be used for that purpose. To the extent your obligation has been discharged or is subject to the automatic stay in a bankruptcy proceeding, this notice is for informational purposes only and does not constitute a demand for payment or an attempt to collect indebtedness as your personal obligation. If you are represented by an attorney, please provide us with the attorney's name, address, and telephone number.

Notice to Customers: RoundPoint Mortgage Servicing Corporation may report information about your mortgage account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

Case Number: KC-2018-0013
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 66 of 80 PageID #: 69

FORM 34-27-3.2

**NOTICE OF MEDIATION CONFERENCE**
**PURSUANT TO**
**R.I. GEN. LAWS § 34-27-3.2**

This Notice is provided to you to inform you of the protections provided by R.I. Gen. Laws § 34-27-3.2 of The Rhode Island Mortgage Foreclosure and Sale Act.

**TO ASSIST YOU IN AVOIDING FORECLOSURE, YOU HAVE THE RIGHT TO A FREE, IN-PERSON OR TELEPHONE MEDIATION CONFERENCE WITH AN INDEPENDENT MEDIATION COORDINATOR. THE MORTGAGEE MAY NOT FORECLOSE UNLESS IT PROVIDES YOU THE OPPORTUNITY TO PARTICIPATE IN THE MEDIATION CONFERENCE, WHICH MUST TAKE BE SCHEDULED WITHIN SIXTY (60) DAYS OF THE RECEIPT OF A COMPLETED APPENDIX B, SINGLE POINT OF CONTACT INFORMATION FOR THE MORTGAGEE, AND PAYMENT INITIATING THE MEDIATION PROCESS HAS BEEN RECEIVED BY THE MEDIATION COORDINATOR. YOU WILL BE CONTACTED BY A FORECLOSURE MEDIATION COORDINATOR TO SCHEDULE THAT MEDIATION CONFERENCE.**

Name of Mortgagor: DAVID CURTIS

Re: 2003193246

INSERT ADDRESS OF RESIDENTIAL REAL ESTATE:
105 QUAKER DR, WEST WARWICK, RI 02893
Date of Default: 6/1/2017

Date of release of loan from automatic stay in bankruptcy proceeding if applicable: N/A

Date of release of loan from protections of the Servicemembers Civil Relief Act, 50 U.S.C. App. §501 et seq., or R.I. Gen. Laws §34-27-4(d), if applicable: N/A

The mortgagee named below ("Mortgagee") hereby notifies you that you are in Default on your mortgage. If you fail to remedy this Default, Mortgagee has the right to foreclose on the real estate securing the mortgage loan referenced in this Notice.

Mortgagee: Embrace Home Loans Inc.

Mortgagee Address:
Street: 25 Enterprise Center
City, State, Zip Code: Newport, RI 02842

Mortgagee Authorized Representative: RoundPoint Mortgage Servicing Corporation

Date mailed: 8/25/2017

Contact Information for Mortgagee Authorized Representative:
Telephone: 704-424-7157
Email: LMMediations@roundpointmortgage.com

cc: Mediation Coordinator: Archie Martins, Rhode Island Housing Mediation Coordinator

Case Number: KC-2018-0013
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 67 of 80 PageID #: 70

FORMULÁRIO 34-27-3.2

PORTUGUESE

## NOTIFICAÇÃO DE CONFERÊNCIA DE MEDIAÇÃO CONFORME LEIS R.I. GEN. § 34-27-3.2

Esta Notificação destina-se a informar-lhe as proteções fornecidas pelas leis R.I. Gen. § 34-27-3.2 de Execução Hipotecária e a Lei de Venda de Valores Imobiliários de Rhode Island.

PARA AJUDAR-ILE A EVITAR O EMBARGO (FORECLOSURE) DA SUA CASA, INFORMAMOS-IHE QUE TEM O DIREITO A UMA CONFERÊNCIA DE MEDIAÇÃO, GRATUITA SEJA VIA TELEFÓNICA SEJA PESSOALMENTE COM UM COORDENADOR INDEPENDENTE DE MEDIAÇÃO. O CREDOR HIPOTECARIO NÃO PODE ATÉ DAR-LHE A OPORTUNIDADE DE PARTICIPAR NESTA CONFERÊNCIA A QUAL SERÁ MARCADA NO PERIODO DE SESSENTA (60) DIAS DESDE OU AO RECEBERMOS O "APPENDIX B" PREENCHIDO E ASSINALANDO O PEDIDO DE INFORMAÇÃO DE UM CONTACTO PARA O CREDOR, OU O PAGO INICIAL REQUERIDO SEJA RECEBIDO PELO MEDIDOR UM COORDENADOR IRÁ CONCTACTAR-LHE PARA MARCAR A DATA DESTA MEDIAÇÃO.

Nome do cliente: DAVID CURTIS

Re: 2003193246
INSERIR ENDEREÇO DO IMÓVEL RESIDENCIAL:
105 QUAKER DR, WEST WARWICK, RI 02893
Data de delinquência: 6/1/2017

Data em que o empréstimo foi liberado da suspensão automática de falência, se aplicável: N/A

Data da exoneração da hipoteca da proteção conferida pela lei dos Estados Unidos da America e do Estado de Rhode Island (Servicemembers Civil Relief Act, 50 U.S.C. App §501 et seq. or R.I. Gen. Laws §34-27-4(d)), se aplicável: N/A

O Crédito Imobiliário denominada abaixo ("Créditos Imobiliários') por este instrumento notifica - se que está inadimplente em sua hipoteca. Se você falhar em corrigir tal inadimplência, Créditos Imobiliários têm o direito de executar o empréstimo de hipoteca consistente dos bens imóveis relacionados nesta notificação.

Créditos Imobiliários: Embrace Home Loans Inc.
             (Digitar ou imprimir nome de Créditos Imobiliários)
Endereço de Créditos Imobiliários:
Rua:            25 Enterprise Center
Cidade, Estado, CEP:    Newport, RI 02842
Representante Autorizado de Créditos Imobiliários: RoundPoint Mortgage Servicing Corporation

Data de envio: 8/25/2017

Informações de Contato para Representante Autorizado de Créditos Imobiliários:

Telefone: 704-424-7157
E-mail: LMMediations@roundpointmortgage.com

cc: Coordenador de Mediação: Archie Martins, Rhode Island Housing Mediation Coordinator



Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 68 of 80 PageID #: 71

FORMULÁRIO 34-27-3.2

SPANISH

---

### NOTIFICACIÓN DE REUNIÓN DE
### MEDIACIÓN SEGÚN
### EL § 34-27-3.2 DE LAS LEYES GENERALES DE RHODE ISLAND (R. I.)

---

Esta notificación se le proporciona para informarle sobre la protección que proveen las Leyes Generales de R. I. en el § 34-27-3.2 de la Mortgage Foreclosure and Sale Act (Ley de Ejecuciones Hipotecarias y Ventas) del estado de Rhode Island.

PARA AYUDARLO A EVITAR LA EJECUCIÓN HIPOTECARIA, USTED TIENE DERECHO A UNA REUNIÓN DE MEDIACIÓN GRATUITA CON UN COORDINADOR DE MEDIACIÓN INDEPENDIENTE. DICHA REUNIÓN SE PODRÁ EFECTUAR PERSONALMENTE O POR TELÉFONO. EL ACREEDOR HIPOTECARIO NO PODRÁ EJECUTAR LA HIPOTECA SIN HABERLE PROPORCIONADO LA OPORTUNIDAD DE PARTICIPAR EN LA REUNIÓN DE MEDIACIÓN, LA CUAL DEBE ESTAR PROGRAMADA DENTRO DE LOS SESENTA (60) DÍAS DE RECIBIR EL APÉNDICE B COMPLETO, PUNTO DE CONTACTO ÚNICO DEL ACREEDOR HIPOTECARIO, Y EL PAGO PARA EL INICIO DEL PROCESO DE MEDIACIÓN. USTED SERÁ CONTACTADO POR UN COORDINADOR DE MEDIACIÓN DE EJECUCIONES HIPOTECARIAS PARA PROGRAMAR LA CONFERENCIA DE MEDIACIÓN.

Nombre del cliente: DAVID CURTIS

Ref.: 2003193246
ESCRIBA LA DIRECCIÓN DE LA PROPIEDAD RESIDENCIAL:
105 QUAKER DR  WEST WARWICK, RI 02893
Fecha de Defecto: 6/1/2017

Fecha de liberación de préstamo de la suspensión, automática en un procedimiento de quiebra, si es aplicable: N/A

Fecha de liberación de la hipoteca de la protección de la ley general Servicemembers Civil Relief Act, 50 U.S.C. App.§501 et seq., or R.I. Gen. Laws §34-27-4(d), si corresponde: N/A

Por la presente, el acreedor hipotecario nombrado a continuación ("Acreedor hipotecario") lo notifica que usted está en mora en los pagos de su hipoteca. Si no soluciona esta mora, el Acreedor hipotecario tiene derecho a ejecutar la hipoteca de la propiedad que garantiza el préstamo hipotecario citado en la referencia de esta notificación.

Acreedor hipotecario: Embrace Home Loans Inc.
                    (Escriba a máquina o en letra de imprenta el nombre del Acreedor hipotecario)
Dirección del Acreedor hipotecario:
Calle: 25 Enterprise Center
Ciudad, estado y código postal: Newport, RI 02842 Representante autorizado del Acreedor hipotecario:
RoundPoint Mortgage Servicing Corporation

Fecha de envío postal: 8/25/2017

Información de contacto del representante autorizado del Acreedor hipotecario:
Teléfono: 704-424-7157
Dirección de correo electrónico: LMMediations@roundpointmortgage.com

cc: Coordinador de Mediación: Archie Martins, Rhode Island Housing Mediation Coordinator

Case Number: K2-2018-0018
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 69 of 80 PageID #: 72

# EXHIBIT E

Case Number: CC-2018-0018
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 70 of 80 PageID #: 73

**From:** ServicingHelp <ServicingHelp@ServicingHome.com>
**Date:** August 16, 2017 at 11:19:45 AM EDT
**To:** dave curtis <dcurtis99@gmail.com>
**Subject:** Acknowledgement

Hello,

Thank you for contacting us. This is an automatic email acknowledging that we have received your message. Your message is being analyzed to determine how we can best meet your needs. Important Note – Duplicative messages may increase the time it takes us to address your concerns

We will begin researching your concern as soon as possible. If appropriate, a formal, written response will be sent to you within 30 business days (or sooner if required by applicable law). Also, for applicable inquiries, your account number will serve as your case reference number.

Please visit our website to access your account information and printable forms at www.rpmservicing.com.

Please note that this email address is not used for interactive customer service. The best way to get immediate help is to speak with one of our friendly and knowledgeable Customer Service Representatives. We are open Monday through Friday from 8:00 AM until 9:00 PM and Saturday from 10:00 AM until 3:00 PM Eastern Time.

Sincerely,

Jeff Martin

AVP – Customer Correspondence

RoundPoint Mortgage Servicing Corporation NMLS ID # 18188

Pursuant to the Fair Debt Collection Practices Act, you are advised that RoundPoint Mortgage Servicing Corporation is deemed to be a debt collector and any information obtained may be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please immediately notify me and permanently delete the original and any copy of any e-mail and any printout thereof.

Case Number: KC-2018-0018
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 71 of 80 PageID #: 74

# EXHIBIT F

Case Number: KC-2018-0018
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

| | |
|---|---|
| Rec Type | L |
| PoolID | MA3662 |
| SeqNo | 1506049253 |
| IssuerID | 4047 |
| Agency | F |
| Purpose | 1 |
| RefiType | |
| FirstPmtDate | 20160601 |
| Maturity | 20460501 |
| Int Rate-Curr | 03625 |
| OPB | 00028400000 |
| UPB-Issue | 00028400000 |
| UPB-Curr | 00027867349 |
| Term | 360 |
| Age | 018 |
| MTM | 342 |
| MosDel | 6 |
| MosPPD | 0 |
| GrossMargin | |
| LTV | 09625 |
| CLTV | |
| DE Ratio | 03374 |
| Score | 610 |
| DownPmtAssist | N |
| Buy Down | N |
| MIP-Upfront | 01750 |
| MIP-Annual | 00850 |
| NoBwrs | 1 |
| FTHB | Y |
| PropType | 1 |
| State | RI |
| MSA | |
| TPOrig | 3 |
| CurMoLiqFlag | N |
| RemovalReason | |
| Report Date | 201711 |
| OrigDate | 20160429 |
| SellerID | |

Case Number: PC-2018-01018
Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 73 of 80 PageID #: 76
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

# EXHIBIT H

Case Number: KC-2018-0018
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 74 of 80 PageID #: 77

# John B. Ennis

*Attorney at Law*

**1200 Reservoir Avenue**

**Cranston, Rhode Island 02920**

**Tel. (401) 943-9230**

November 10, 2017

Roundpoint Mortgage Servicing Corporation
Attn Correspondence
PO Box 19789
Charlotte, NC 28219-9409

Client: David Curtis
Property Address: 105 Quaker Drive
West Warwick, RI 02893
Account No: 2003193246

**Re: Request for Information Pursuant to Section 1024.36 of Regulation X**

Dear Sir or Madam:

This is a Request for Information relating to your servicing of the mortgage loan of the above-named client. All references herein are to Regulation X of the Mortgage Servicing Act as amended by the Consumer Financial Protection Bureau pursuant to the Dodd Frank Act. The written authority of the client to my law firm for this Request is attached hereto and incorporated herein by this reference.

Pursuant to Section 1024.36(d), you must respond no later than ten (10) days (excluding legal public holidays, Saturdays and Sundays) after you receive this request for information.

Please provide the following information within the time periods noted herein:

1. The identity of and address for the current owner of the mortgage loan identified herein.
2. The identity of and address for the master servicer of the mortgage loan identified herein.
3. The identity of and address for the current servicer of the mortgage loan identified herein.

Sincerely,

John B. Ennis, Esq.

Case Number: KC-2018-0013
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 75 of 80 PageID #: 78

# EXHIBIT I

Case Number: KC-2018-0018
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 76 of 80 PageID #: 79

# John B. Ennis

*Attorney at Law*

**1200 Reservoir Avenue**
Cranston, Rhode Island 02920

Tel. (401) 943-9230
December 5. 2017

Fax (401) 679-0035

Roundpoint Mortgage Servicing Corporation
Attn Correspondence
PO Box 19789
Charlotte, NC 28219-9409

Client: David Curtis
Property Address: 105 Quaker Drive
West Warwick, RI 02893
Account No: 2003193246
Dear Sir or Madam:

Please consider this letter to constitute a Notice of Error under 12 CFR Section 1024.35 of Regulation X of the Mortgage Servicing Act under RESPA, which Regulation became effective on January 10, 2014. These amendments implemented the Dodd-Frank Wall Street Reform and Consumer Protection Act provisions regarding mortgage loan servicing. Under these amendments, you must acknowledge receipt of this Notice within five (5) days thereof (excluding legal public holidays, Saturdays and Sundays) and must advise me of your responses to this notice within thirty (30) days of receipt thereof (excluding legal public holidays, Saturdays and Sundays).

The written authority of the client to my law firm for this Request is attached hereto and incorporated herein by this reference.

Under Section 1024.35(b) of Amended Regulation X. the term "error" means the following categories of covered errors:

(1) Failure to accept a payment that conforms to the servicer's written requirements for the borrower to follow in making payments.
(2) Failure to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law.
(3) Failure to credit a payment to a borrower's mortgage loan account as of the date of receipt, in violation of the prompt crediting provisions in 12 CFR 1026.36(c)(1).
(4) Failure to pay taxes, insurance premiums, or other charges, including charges that the consumer has voluntarily agreed that the servicer should collect and pay, in a timely manner as required by the escrow provisions of § 1024.34(a), or to refund an escrow account balance as required by § 1024.34(b).
(5) Imposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the consumer, which includes, for example, a late fee for a payment that was not late, a charge you imposed for a service that was not provided, a default property-management fee for consumers

Case Number: KC-2018-0013
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 77 of 80 PageID #: 80

who are not in a delinquency status that would justify the charge, or a charge for force-placed insurance provisions.

(6) Failure to provide an accurate payoff balance amount upon a borrower's request pursuant to 12 CFR 1026.36(c)(3).

(7) Failure to provide accurate information to a borrower for loss mitigation options and foreclosure, as required by the early intervention provisions of § 1024.39.

(8) Failure to accurately and timely transfer information relating to the servicing of a borrower's mortgage loan account to a transferee servicer.

(9) Making the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process in violation of the loss mitigation procedures of § 1024.41(f) or (j).

(10) Moving for foreclosure judgment or order of sale, or conduction a foreclosure sale in violation of the loss mitigation procedures of this rule § 1024.41(g) or (j).

(11) Any other error relating to the servicing of the consumer's mortgage loan. Please note "servicing" is defined in § 1024.2(b).

**The consumer believes that you have committed by not responding to a Request for Information within ten business days of receipt. In this Request for Information, the consumer requested the following information:**

**Please provide the following information within the time periods noted herein:**

1. **The identity of and address for the current owner of the mortgage loan identified herein.**
2. **The identity of and address for the master servicer of the mortgage loan identified herein.**
3. **The identity of and address for the current servicer of the mortgage loan identified herein.**

**You received this Request for Information on November 13, 2017 and have not responded within ten business days of receipt. In your acknowledgement dated November 14, 2017 you made no reference to this Request for Information and indicated that you would respond within thirty business days of November 14, 2017.**

Please correct all of these errors and provide me with notification of the correction, the date of the correction, and contact information for further assistance; or after conducting a reasonable investigation and providing the borrower through my firm with a notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information for further assistance.

Please be advised that for 60 days after receipt of a Notice of Error, you may not furnish adverse information to any consumer reporting agency regarding any payment that is the subject of the Notice of Error pursuant to § 1024.35(i).

Sincerely,

John B. Ennis, Esq.

# EXHIBIT J



GARY D. MARINOSCI, ESQ.
Admitted in RI & MA

CHAD A. MORRONE, ESQ.
Admitted in MA

BART HEFFERNAN, ESQ.
Admitted in FL

BRIAN M. KISER, ESQ.
Admitted in RI & MA

AMANDA W. TIERNAN, ESQ.
Admitted in CT

JOSEPH DOLBEN, ESQ.
Admitted in NH, MA & RI

## NOTICE TO OCCUPANT OF PENDING ACQUISITION
October 6, 2017

91 7199 9991 7038 5737 3586

All Occupants
105 Quaker Drive
West Warwick, RI 02893

HUD/FHA Case No. 451-1495952-703

AVISO IMPORTANTE PARA PERSONAS DE HABLA HISPANA.
ESTO ES UN AVISO MUY IMPORTANTE. SI NO ENTIENDE EL CONTENIDO, OBTENGA UNA TRADUCCIÓN INMEDIATAMENTE. SI USTED NO RESPONDE DENTRO DE VEINTE (20) DÍAS, PUEDE QUE TENGA QUE MUDARSE DE LA CASA O APARTAMENTO EN QUE VIVE.

Dear Sir or Madam,

The mortgage for the property in which you are living is in foreclosure as a result of the property owner's default. Within the next 60 to 90 days, title to the property is expected to be transferred to RoundPoint Mortgage. Sometime thereafter, ownership of the property will probably be transferred to the Secretary of Housing and Urban Development (HUD).

HUD generally requires that there be no one living in properties conveyed to the Secretary as a result of a foreclosure. As the Federal Housing Administration's (FHA) single family program is a mortgage insurance program, it must sell all acquired properties and use the proceeds of sale to help replenish the FHA Mortgage Insurance Fund. It is not a rental program. There are other programs within HUD that assist in making rental housing available.

However, before RoundPoint Mortgage conveys the property to HUD, you may be entitled to remain in the property for some period of time, pursuant to the Protecting Tenants at Foreclosure Act of 2009 (PTFA) of state or local law. If you are a bona fide tenant (someone other than the mortgagor, or the child spouse or parent of the mortgagor occupying the property pursuant to a bona fide lease or tenancy), a separate notice regarding your occupancy rights under PTFA will be provided to you when complete title to the property is transferred to RoundPoint Mortgage as a result of an order of a court or pursuant to provisions in the mortgage, deed of trust or security deed.

If you are not entitled to remain in the property pursuant to the PTFA or state or local law, you may nevertheless be eligible to remain in the property upon conveyance to HUD, if certain conditions are met, as described in Attachment 3, Conditions for Continued Occupancy. To be considered for continued occupancy upon conveyance to HUD, you must submit a written request to HUD within 20 days of the date at the top of this letter. Oral requests are not permitted.

Please use the enclosed Attachment 1, Form HUD-9539, Request for Occupied Conveyance, in making your request, as it gives HUD information it needs to make its decision. You must send your request and the enclosed Attachment 2, Request for Verification of Employment, to HUD's Mortgagee Compliance Manager (MCM) at the following address:

Case Number: KC-2018-0057
Filed in Kent County Superior Court
Submitted: 2/5/2018 7:51:41 AM
Envelope: 1396186
Reviewer: Lindsay Z.

Case 1:18-cv-00057-JJM-PAS   Document 1-1   Filed 02/08/18   Page 80 of 80 PageID #: 83

Information Systems & Network Corporation
Shepherd Mall Office Complex
2401 NW 23rd Street, Suite 1D
Oklahoma City, OK 73107
Phone: (888) 619-7835
FAX: (405) 602-1520
Email: mcm-info@isncorp.com

If an individual residing in the property suffers from a permanent, temporary, or long-term illness or injury that would be aggravated by the process of moving from the property, please also provide supporting documentation of the illness or injury. This documentation must include a projection of the date that the individual could be moved without aggravating the illness or injury and a statement by a state-certified physician establishing the validity of your claim.

Additional information that you wish to include with your request may be written on additional pages that you attach to the Request for Occupied Conveyance form.

If HUD approves your request to remain in the property, you will be required to sign a month-to-month lease and pay rent at the prevailing fair market rate. If HUD does not in fact become owner of this property, any decision it may make with respect to your continued occupancy will no longer apply.

Your right to continued occupancy of the property under HUD's Occupied Conveyance policies will only be temporary, depending on the circumstances, as described in Attachment 4, Temporary Nature of Continued Occupancy.

For assistance in finding affordable housing, you may wish to contact one or more of HUD's approved housing counseling agencies. These agencies usually provide services at little or no cost. A counselor may be able to recommend other organizations that can also be of assistance. If you have access to the Internet, you may locate a local housing counseling agency by vising the following webpage: http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm. Alternatively, you may call the HUD Housing Counseling and Referral Line, weekdays between 9:00 am and 5:00 pm EST. The Referral Line telephone number is (800) 569-4287.

If you have any questions concerning this notice, please contact:

RoundPoint Mortgage Servicing Corporation
Attention Loss Mitigation Department
PO Box 19409
Charlotte, NC 28219-9409
Phone: 877-426-8805

Sincerely,


Marina V. Plummer, Esq.
Marinosci Law Group, P.C.
Attorneys for Plaintiff
275 West Natick Road, Suite 500
Warwick, RI 02886
PMD/GB
Certified Mail/RRR and Regular Mail
Attachment 1 *(Request for Occupied Conveyance – Form HUD-9539)*
Attachment 2 *(Request for Verification of Employment)*
Attachment 3 *(Conditions for Continued Occupancy)*
Attachment 4 *(Temporary Nature of Continued Occupancy)*
                    Attachment 1 *(Request for Occupied Conveyance – Form HUD-9539)*