UNITED STATES DISTICT COURT

FOR THE DISTRICT OF RHODE ISLAND


DAVID CURTIS

     VS                               Case Number:19-CV-57 –JJM-PAS


EMBRACE HOME LOANS, INC. ET AL


**MEMORANDUM OF LAW**


     This matter is before the Court on the Motion for Summary Judgment filed by Defendants, Embrace Home Loans, Inc.("Embrace") and Roundpoint Mortgage Servicing Corporation ("Roundpoint").  The complaint, which was originally filed in the Kent County Superior Court, was removed to this Court by Roundpoint and contains two counts against Roundpoint  pursuant to  the Real Estate Settlement and Procedures Act, ("RESPA") and Count against Embrace for Breach of Contract and Three Counts against Embrace for Truth In Lending ("TILA") Violations. The contract Count 4 is for breach of contract for failing to comply with the Regulations of the Department of Housing and Urban Development ("HUD"), which regulations are incorporated into the terms of the mortgage. The National Housing Act requires that, as soon as a borrower faces default the "mortgagee shall engage in loss mitigation actions for the purpose of providing an

alternative to foreclosure … as provided in regulations by the Secretary." 12

U.S.C. § 1715u(a). HUD's regulations implementing this statute are clear: "It is the

intent of the Department that no mortgagee shall commence foreclosure or acquire

title to a property until the requirements of this subpart have been followed." 24

C.F.R. § 203.500. Before an FHA mortgagee initiates foreclosure, "the mortgagee

must ensure that all servicing requirements" for loss mitigation "have been met."

24 C.F.R. § 203.606. Under the terms of Plaintiff's mortgage the mortgagee

acknowledged that the lender could not accelerate the loan or foreclose "except as

limited by regulations issued by the Secretary." Mortg. ¶ 9 and ¶ 2 (RA 26, 27, 29).

A long-standing HUD regulation requires that an FHA mortgagee make reasonable

efforts  to meet with  the borrower to review all loss mitigation options before any

acceleration of the loan or foreclosure. 24 C.F.R. § 203.604(b). Before

three monthly installments are due on the mortgage, the mortgagee must arrange

this meeting. Id. If a lender approves a repayment plan and the borrower

later defaults, the lender must again solicit the borrower for a face-to-face review

meeting. Id. Courts around the country have long considered compliance with this

HUD regulation to be a condition precedent to a valid foreclosure of an FHA

mortgage. This Court has adopted the reasoning of those decisions, in *Dan Harry*

"The HUD regulations are express terms of the mortgage and thus fall under the

first clause. Non compliance with  FHA regulations can be basis for setting

aside completed non-judicial foreclosure sale); *Mathews v. PHH Mortg. Corp.*, 283 Va. 723, 724 S.E. 2d 196 (2012); *Lacy-McKinney Taylor Bean & Whitaker Mortg. Corp.,* 937 N.E. 2d 853, 863 (Ind. Ct. App. 2010); *U.S. Bank v. Detweiler*, 946 N.E. 2d 777, 783 (Ohio Ct. App. 2010). This Court has accurately analyzed the mandatory nature of the FHA face-to-face meeting rule , which should apply to Mr. Curtis.  This Count seeks compensatory damages and punitive damages arising from the breach of contract and covenant of good faith and dealing by Embrace along with legal fees and costs and  legal fees pursuant to R.I.G.L.§ 9-1-45  for breach of contract.

Count V seeks Injunctive Relief to enjoin any future foreclosure attempt unless there is compliance with the provisions of the HUD regulations.  Count I seeks damages under TILA for failure to identify the owner, holder and Master Servicer of the Mortgage loan. Count II seeks damages for failure to provide an accurate payoff statement. Count III seeks damages pursuant to RESPA for failure to correct an error and identity the owner and master servicer of the mortgage loan. Count VI seeks damages for failure to send the Plaintiff accurate periodic statements due to the inclusion on the statement of fees for attributable to a foreclosure attempt, which was restrained by Justice Licht of the Kent Count

Superior Court before this case was removed to this Court by both Defendants, who stated in the Removal Notice:

Removal of this action to the United States District Court for the District of Rhode Island is permissible pursuant 28 U.S.C. §§ 1331 and 1441(a) because the Amended Complaint claims violations of federal statutes and regulations, including, inter alia, the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq., the Real Estate Settlement Procedures Act 0f 1974, 12 U.S.C. §§ 2601 et seq., and the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. 111-203, 124 Stat. 1376 (2010), as well as certain regulations promulgated by the U.S. Department of Housing and Urban Development (24 C.F.R. §§ 203.501, 203.604).

**THE DEFENDANTS' AFFIDAVIT INCORPORATES UNSUBSTANTIATED HEARSAY WHICH SHOULD BE DISREGARDED**

The Defendant submitted an affidavit of its supposed which sought to admit into the record some type of document from an entity not a party to this case in violation of the hearsay rule. This person sates without providing the documents on which she relied:

I make this affidavit based upon my review of those records relating to the loan and form my own personal knowledge of how they are kept and maintained. She then stated without any personal knowledge:

4

Attached to Defendants' SOF as Exhibit O is a true and accurate copy of a report Defendants received from National Creditors Connection, Inc. regarding an August 23, 2017 face-to-face meeting. The Plaintiff has disputed all of the assertions in this purported document, which should be stricken as hearsay. The Defendants asserted in this affidavit that a meeting occurred on August 23, 2017. This purported recorded indicated that it occurred on August 24, 2017. Nothing could be more uncorroborated hearsay than this document which contradicts the Defendant's Affidavit and Memorandum.

The recent decision of the First Circuit Court of Appeals in *US Bank National Association v. Jones*, 18-1719(May 30, 2019) references FRE 803(6) and records of prior mortgage services and is the basis for Defendant's Motion to Strike the Affidavit of Sony Prudent, the purported affiant in the Summary Judgment motion in this case. In *Jones*, the Court analyzed the hearsay rule and whether the testimony of a Caliber Loan Servicing employee and an exhibit referencing the status of the loan after two prior servicers was properly admitted under the hearsay rule business record's exception FRE 803(6). The issue in *Jones* was whether there was a sufficient foundation under 803(6) for the current loan servicer employee to testify about the status of the mortgage loan account and how it was boarded into the electronic system of record of the current servicer. In *Jones*, there was live testimony of a witness at a foreclosure trial. The Court set

forth the criteria for the admission of records of another servicer. The Court held:

[W]hether a third party's records . . . can be integrated into the records of the offering entity . . . for purposes of admission under the business records exception **is not an issue upon which this circuit has reached a uniform conclusion**" covering every instance. United States v. Savarese, 686 F.3d 1, 12 (1st Cir. 2012). **Rather, the admissibility of the evidence turns on the facts of each case.** Thus, we have affirmed the admission of business records containing third-party entries without third-party testimony where the entries were **"intimately integrated**" into the business records, FTC v. Direct Marketing Concepts, Inc., 624 F.3d 1, 16 n.15 (1st Cir. 2010), or where the party that produced the business records "**relied on the [third-party] document and documents such as those[] in his business,**" United States v. Doe, 960 F.2d 221, 223 (1st Cir. 1992) (internal quotation marks omitted). Conversely, in the absence of third-party evidence**, we have rejected the admission of business records containing or relying on the accuracy of third-party information integrated into the later record where, for example, the later business did not "use[] a procedure for verifying" such information, lacked a "self-interest in assuring the accuracy of the outside information,**" United States v. Vigneau, 187 F.3d 70, 77 & n.6 (1st Cir. 1999) (emphasis omitted), or sought admission of third-party statements made "by a stranger to it," Bradley, 891 F.3d at 35 (quoting Vigneau, 187 F.3d at 75 (alterations omitted)). The key question is whether the records in question are "reliable enough to be admissible." Direct Marketing Concepts, 624 F.3d at 16 n.15.

The Court reviewed the testimony of the trial witness and noted:

In answering that question, we are mindful that the "**reliability of business records is said variously to be supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation**." Fed. R. Evid. 803 advisory committee's note to 1972 proposed rules. The rule seeks "to capture these factors and to extend their impact" by applying them to a "regularly conducted activity." Id (emphasis added).

The District Court had received testimony from a loan servicer employee who had

testified that:

6

**Caliber incorporated the previous servicer's records into its own database and "plac[ed] its own financial interest at stake by relying on those records," and that "Caliber's acquisition department took steps to review the previous servicer's records in a way that assured itself of the accuracy of the records**." 330 F. Supp. 3d 530, 543 (D. Me. 2018); see Trial Tr. 28:3-6, 60:17-19. (emphasis added)

In *Jones*, the Court also noted that the mortgagor did not dispute the transaction history by claiming overbilling or unrecorded payments and did not contest the findings of the District Court that there were no discrepancies. However in this case, the affidavit of Plaintiff establishes a dispute as to whether any meeting ever occurred. Here the purported affiant does not indicate any familiarity with the records of the other entity and could not state that this record was ever integrated into Roundpoint's records. She did not indicate any familiarity with how the record was prepared and who the prepared this record, which has no signatory. The pictures of Plaintiff's home were taken on August 23, 2017 and the "record" indicates that there was a fieldcall Date of August 24, 2017 at 4:30 PM, which varies from the assertions of the Defendants. This record is inherently inaccurate and should be disregarded. Thus since it is the only basis for the motion of the Defendants, then without this "record" Summary Judgment would be appropriately granted for the Plaintiff. However in view of the document's inherent inconsistency, the fact that it was not established that this person was involved in loss mitigation and was not even identified other than as Raul, this document does not support summary judgment and is inherently untrustworthy.

The Defendant cites *Grimaldi v. Caliber*, 1:126-CV-519-S-PAS.

However in that case, a Caliber loss mitigation employee went to the premises of the Plaintiff:

> Defendants timely filed their Renewed Motion for Summary Judgment with an affidavit averring that a Caliber default servicing officer made a personal visit to Plaintiff's Property on October 25, 2017. (Dunham Aff. ¶¶ 1–2, ECF No. 17.) The affidavit further states that Plaintiff was not home at the time of the visit and, in his absence, the default servicing officer left a letter at Plaintiff's property. (Id. ¶¶ 3–5.) The letter left at Plaintiff's property offered Plaintiff the opportunity for a faceto-face meeting if he so desired. (Id. ¶¶ 4–5; Letter Ex. A, ECF No. 17-1.)

The affiant in Grimaldi was a default service employee, who filed an affidavit stating that he was a Default Servicing Officer and appeared at the property. In this case, no one knows who prepared this "report" , who signed it and what the person's job is for that company, which the Defendant refers to as a Vendor.  The purpose of a face to face meeting is to discuss loss mitigation and not merely to drop off a letter.

In view of these facts, the Motion for Summary Judgment should be denied.

**THE DEFENDANT CANNOT RAISE SPOKEO ARTICLE II STANDING ISSUES IN REGARD TO COUNT I SINCE CARRINGTON REMOVED THIS CASE AND ASSERTED FEDERAL COURT JURISDICTION**

In its Notice of Removal, Roundpoint asserted Federal Jurisdiction and stated as to Counts I and VI, violations of the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"), Count III asserts violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA") and Regulation X enacted

thereunder. See Ex. A,  to the Notice of Removal. Thus the Defendants asserted the jurisdiction of this Courtl.

Thus the allegations for Federal Jurisdiction were made by the Defendant, not the Plaintiff.  Embrace and Roundpoint have  alleged in their Motion that the  TILA and RESPA counts that the Plaintiff has not alleged a sufficient injury to maintain a RESPA count warranting a dismissal based on the *Spokeo* argument.  The Defendants however was the party which removed this case and asserted jurisdiction. If actual damages were not properly pleaded then such would render the claim subject to dismissal for lack of jurisdiction which they have not asserted.   Such a dismissal would be for lack of jurisdiction, pursuant to FRCP 12(b)(1), despite the fact that it pleaded Federal Jurisdiction.  It also contended that the Plaintiff did not plead any damages sufficient to establish Article III jurisdiction.

The remedy for Spokeo dismissals is based on FRCP12(b)(1), not 12(b)(6).  In *Mocek v. Allsaints USA Limited*, 220 F. Supp. 3d 910(N.D., Illinois, 2016) the Court remanded the case due to lack of jurisdiction based on *Spokeo*. Plaintiff had filed a class action, which Defendant removed to Federal Court.   Plaintiff moved to remand and Defendants moved to dismiss based on a *Spokeo* argument for lack of jurisdiction. The Court noted that:

"dismissals because of absence of federal jurisdiction ordinarily are without prejudice

. . . because such a dismissal may improperly prevent a litigant from refiling his

complaint in another court that does have jurisdiction."

 In *Katz v. Six Flags Great Adventure, LLC*, CA No. 18-116(D. New Jersey, August

13, 2018), the Court cited *Mocek,* in remanding a case to State Court after removal by

the Defendant.  The Court noted that remand was mandatory if the Court found that

there was no Article III jurisdiction despite Defendant's protestations that a Motion to

Dismiss should be granted.  The Court held:

Moreover, courts addressing this precise issue have consistently found that, where a
defendant removes a case from state court based on a federal question, but Article III
standing is lacking, the proper recourse is to remand the case, rather than to dismiss
the action. *See, e.g., Collier v. SP Plus Corp.,* 889 F.3d 894, 897 (7th Cir.
2018) (holding, in a case that was removed under FACTA, that, upon finding that
Article III standing was lacking, "§ 1447(c) required the district court to remand this
case to state court" rather than to dismiss it); *Polo v. Innoventions Int'l, LLC,* 833
F.3d 1193, 1196 (9th Cir. 2016) (holding that, where Article III standing is lacking in
a case removed on the basis of federal question jurisdiction, "[r]emand is the correct
remedy because a failure of federal subject-matter jurisdiction means only that the
federal courts have no power to adjudicate the matter. State courts are not bound by
the constraints of Article III.");


Thus the Court did not dismiss the case, but instead remanded it to State Court.

     *In Maine Association of Interdependent Neighborhoods v. Commissioner,*

*Maine Depart Of Human Services*, 876 F.2d 1051 (First Cir., 1989), the First Circuit

reversed the District Court which had dismissed a case for lack of jurisdiction on the

grounds that remand would be futile.  The Court relied on 28 U.S.C. 1447(c), which

states:

> If at any time before final judgment it appears that the district court lacks
> subject matter jurisdiction, the case *shall* be remanded.

The Court found that the statute mandated remand not a dismissal.

Similarly *in Mulvey v. Allstate Insurance Company*, Civ. Action No. 3:18-

CV01271 (N.D. Texas, December 4, 2018), the District Court dismissed a case

without prejudice based on lack of standing.  Defendants had argued that the Court

lacked standing and also sought relief on the grounds of failure to state a claim.  The

Court dismissed without prejudice stating:

> Plaintiff cannot meet his burden to allege or establish he suffered an injury-in-
> fact which is "the `[f]irst and foremost'" of the required elements of
> standing. *Spokeo*,136 S.Ct. at 1547. Accordingly, because Plaintiff Aaron Mulvey did
> not have standing at the time this lawsuit was filed, the case must be dismissed
> without prejudice because the Court lacks subject matter jurisdiction. *See* FED. R.
> CIV. P. 12(h)(3).

In *Viera v. Bayview Loan Servicing, et al*,C.A. No 17-523,(D. Rhode Island,

October 12, 2018), this Court dismissed a RI FDCPA claim and a TILA claim

pursuant to FRCP12(b)(1) without prejudice pursuant to *Spokeo* analysis.  Plaintiff

had alleged charges of improper fees to the mortgage loan account under the

RIFDCPA and TILA.  A similar argument is made by the Defendants in this case in

which they raise defenses based on Spokeo which if accepted by this Court would render this Court without jurisdiction to hear this case and mandate a remand due to the fact that the State Court claims are based solely on Supplemental Jurisdiction, which would result in those claims being remanded in the event that the Court accepted the argument of the Defendants, which bear the burden of establishing jurisdiction in this Court, not the Plaintiff, which filed a State Court action and did not seek to assert Article III jurisdiction. Thus this Court's must remand the entire case to State Court under 28 U.S.C. 1447(c) because the Defendants are asserting lack of jurisdiction.  The Court cannot consider the state law claims because they are actionable only in the event that this Court has jurisdiction over the Federal Claims. Since the Defendants seek to dismiss for lack of jurisdiction under *Spokeo*, their removal was improper and remand should be ordered.

## THE TILA CLAIM IS WELL PLEADED AND CONTAINS SUFFICIENT ALLEGATION OF ACTUAL HARM

In the event that this Court does not remand the case to the Superior Court due to Defendant's assertions that the case should not have been removed due to lack of Article III standing, the Plaintiff suggests that the following  bases for damages consistent with *Spokeo.* The Defendant was mailed a letter on Novemmber 10, 2013 requesting the following information:

This is a Request for Information relating to your servicing of the mortgage loan of the above-named client. All references herein are to the Truth In Lending Act

("TILA").   The written authority of the client to my law firm for this Request is attached hereto and incorporated herein by this reference. This request is being made pursuant to the provisions of the Truth in Lending Act, 15 USC 1641(f), which provides:

**(f) Treatment of servicer**

**(1) In general**

**A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation.**

**(2) Servicer not treated as owner on basis of assignment for administrative convenience**

**A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation. Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation.**

**(3) "Servicer" defined**

**For purposes of this subsection, the term "servicer" has the same meaning as in section 2605 (i)(2) of title 12.**

**(4) Applicability**

**This subsection shall apply to all consumer credit transactions in existence or consummated on or after September 30, 1995.**

**Pursuant to TILA, you must respond no later than ten (10) days (excluding legal public holidays, Saturdays and Sundays) after you receive this request for information.**

**Please provide the following information within the time periods noted herein:**

**1.   The identity of and address for the current owner of the mortgage loan identified herein.**

**2.   The identity of and address for the master servicer of the mortgage loan identified herein.**

**3.   The identity of and address for the current servicer of the mortgage loan identified herein.**

**4.   The identity of and address for the holder of the mortgage note.**

The Defendant failed to provided this information pursuant to the statute. Instead it stated in its response letter dated December 21, 2017 that the insurer of the loan is Federal Housing Administration. Contrary to the assertions of the Defendants, there was no identification of the owner of the mortgage loan, the holder of the mortgage note and the identity of the master servicer in this letter along with their addresses. The letter stated that the loan is serviced by Round Point Mortgage Servicing Corporation on behalf of Embrace Home Loans. In view of the fact that the Land Evidence Records of West Warwick indicate that the mortgager was still vested in Mortgage Electric Resistration Systems, Inc. ("MERS"), the Plaintiff sought this information. In 2018 he sent another TILA letter incurring additional costs and expenses. (Plaintiff's Affidavit)   LLC. Its failure to respond to the TILA letter requesting the identity of the owner of the mortgage note, and that of the Master Servicer constituted a violation of TILA. The Plaintiff  has demonstrated that he incurred damages in trying to get this information, in view of the mortgage status and Exhibit F, which was a report from a witness, Bernard Patterson who

14

provided information that the Ginnie Mae Pool MA 3662 possessed the mortgage

in November 2017 ( and still does today according to its database).


   The first appellate FDCPA decision addressing constitutional standing after

*Spokeo* is the Eleventh Circuit's unpublished decision in *Church v. Accretive Health,*

*Inc*., 2016 WL 3611543 (11th Cir. July 6, 2016). The court held that the complaint,

which alleged a failure to give the consumer the information required by sections

1692e(11) and 1692g, sufficiently alleged a concrete injury that met Spokeo's

standards:

> The invasion of Church's right to receive the disclosures is not hypothetical or
> uncertain; **Church did not receive information to which she alleges she was**
> **entitled.** While this injury may not have resulted in tangible economic or physical
> harm that courts often expect, the Supreme Court has made clear an injury need not
> be tangible to be concrete. See *Spokeo, Inc*., 578 U.S. at ---, 136 S. Ct. at 1549;
> *Havens Realty Corp*., 455 U.S. at 373. Rather, this injury is one that Congress has
> elevated to the status of a legally cognizable injury through the FDCPA. Accordingly,
> Church has sufficiently alleged that she suffered a concrete injury, and thus, satisfies
> the injury-in-fact requirement. (emphasis added)


   *In Papetti v. Does 1-25*, 2017 WL 2304227 (2d Cir. May 26, 2017), also

unpublished, takes a similarly strong position—that the violation of FDCPA

protections, at least those found in sections 1962e and 1692g, is a concrete injury in

and of itself: The purpose of the FDCPA is, among other things, to protect debtors

from "abusive debt collection practices by debt collectors." Section 1692g furthers

that purpose by requiring a debt collector who solicits payment from a consumer to

provide that consumer with "a detailed validation notice," which allows a consumer

to confirm that he owes the debt sought by the collector before paying it. And,

similarly, Section 1692e protects a consumer's ability to fully avail himself of his legal rights by prohibiting debt collectors from deceiving or misleading debtors in the course of collecting a debt. Thus, the FDCPA violations alleged by Papetti, taken as true, "entail the concrete injury necessary for standing."

In *Sayles v. Advanced Recover System, Inc.,* 865 F.3d 246 (5th Cir. 2017 The Fifth Circuit held that a consumer who alleged that a collector failed to report a disputed debt as disputed had Article III standing. The consumer had not alleged any actual damages. Noting the Supreme Court's holding in *Spokeo* that standing can be established where a statutory violation creates the risk of real harm, the Fifth Circuit held that this section 1692e(8) violation "exposed Sayles to a real risk of financial harm caused by an inaccurate credit rating."

The Fourth Circuit addressed FDCPA standing in two unpublished decisions, *Moore v. Blibaum & Associates, P.A.*, 2017 WL 3049521 (4th Cir. July 19, 2017), and the very similar case *Ben-Davies v. Blibaum & Assocs.*, P.A., 2017 WL 2378920 (4th Cir. June 1, 2017). In *Moore* the plaintiff alleged that the collector demanded payment of an inflated amount because it had applied an improper interest rate. The Fourth Circuit held that this was not a bare procedural violation, divorced from any concrete harm. It noted that the plaintiff had alleged that she had suffered emotional distress, anger, and frustration as a consequence of the FDCPA violations. It therefore vacated the district court decision, which had dismissed the FDCPA claim for lack of standing, and remanded the case for further proceedings. In a footnote it stated that

neither a settlement offer made to the plaintiff nor her non-payment on the state court judgment were factors that should be considered in determining whether she had standing. *In Demarais v. Gurstel Chargo, P.A.*, --- F.3d ---, 2017 WL 3707437 (8th Cir. Aug. 29, 2017). The court held that a consumer had standing to assert FDCPA claims based on two wrongful acts by a collection firm. First, the firm filed a collection action seeking interest to which it was not entitled. It also scheduled the case for trial without having any evidence to present, on the assumption that the consumer would not appear and that it would be able to obtain a default judgment. When the consumer appeared it asked for a continuance. The consumer alleged that these actions amounted to an attempt to collect a debt not owed in violation of sections 1692e(2) and 1692f(1), and an improper threat to take action that the collector could not and did not intend to take. The court held the consumer's allegations that he had to retain an The court held the consumer's allegations that he had to retain an attorney and serve discovery requests and that he spent time to defend against the meritless claim amounted to concrete injuries. It also held that the collector's false representations about the amount of the debt caused a concrete injury because it created "risks of mental distress traditionally recognized in unjustifiable-litigation torts and that Congress judged sufficient for standing to sue." The second wrongful act was that, after dismissing the collection action with prejudice, the firm served discovery requests on the consumer, falsely stating that responses were due in

thirty days, which the consumer alleged was also an attempt to collect a debt not owed. The consumer did not allege any tangible harm resulting from this communication, but the court held that being subjected to attempts to collect debts not owed has a close relationship to the harm made actionable by the common law torts of malicious prosecution, wrongful use of civil proceedings, and abuse of process. It also held that Congress had created a statutory right to be free from attempts to collect debts not owed, and that violations created the risk of mental distress, a harm that Congress identified when enacting the FDCPA.

　　In  *Williams v. Rushmore Loan Management Services, LLC*, No 3:15-cv-673 (D. Connecticut, March 31, 2018 the Court did not dismiss an FDCPA case based on *Spokeo* on the  grounds that :


"where a plaintiff sues to enforce a *substantive* legal right conferred by statute, she has standing to pursue that claim without need to allege a `material risk of harm' because the infringement of that right constitutes, in and of itself, a concrete injury." Bautz v. ARS Nat'l Servs., Inc., 226 F. Supp. 3d 131, 141 (E.D.N.Y. 2016) (emphasis added) (citing Church v. Accretive Health, Inc., 654 F. App'x 990, 995 n.2 (11th Cir. 2016) (per curiam)); accord Garcia v. Law Offices Howard Lee Schiff P.C., No. 3:16-CV-00791 VAB, 2017 WL 1230847, at *3 (D. Conn. Mar. 30, 2017).

To determine whether a plaintiff has standing based on the violation of a statute, courts engage in a claim-by-claim analysis. For example, in Strubel, 842 F.3d at 190-194, the Court of Appeals addressed four alleged violations of the Truth in Lending Act ("TILA") based on the defendant's failure to disclose certain information to the plaintiff. The Court found standing with respect to two of the alleged violations: (1) the defendant's failure to disclose a consumer's rights regarding disputed credit card

purchases, and (2) its failure to disclose that a consumer must contact a bank in writing or electronically if dissatisfied with a credit card purchase. Id. at 190-91. These disclosure requirements serve "to protect a consumer's concrete interest in `avoiding the uninformed use of credit,' a core object of the TILA." Id. at 190 (quoting 15 U.S.C. § 1601(a)).[7]

Here, all of plaintiff's claims arise under the FDCPA. The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692. In enacting the FDCPA, Congress found that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." Id.

Williams alleges a concrete injury with respect to his claims that Rushmore falsely stated that the property was in foreclosure and communicated false information to a credit bureau, both "false, deceptive, or misleading representations" under 15 U.S.C. § 1692e. Most courts have found that § 1692e confers a substantive right: "By enacting the FDCPA, Congress permissibly created a right — the right to be free from false, deceptive, or misleading practices by debt collectors — for which a violation constitutes a particularized injury." Remington v. Fin. Recovery Servs., Inc., No. 3:16-CV-865 (JAM), 2017 WL 1014994, at *2 (D. Conn. Mar. 15, 2017).[8]

Even if § 1692e confers only procedural rights, Williams alleges more than a "bare procedural violation." Protecting consumers from unfair debt collection practices, including false or misleading statements made by debt collectors, is a "core object of the [FDCPA]." Bautz, 226 F. Supp. 3d at 149 (quoting Strubel, 842 F.3d at 190). The FDCPA is meant to protect consumers from financial stress and invasions of privacy, and a violation of § 1692e risks real harm to those interests. See Bautz, 226 F. Supp. 3d at 148-49; Sayles v. Advanced Recovery Sys., Inc., 865 F.3d 246, 250 (5th Cir. 2017) (consumer had standing with respect to claim debt collector communicated false information to credit bureau based on "real risk of financial harm caused by an inaccurate credit rating").

In *IM v. Bayview Loan Services, LLC*, No. 16-CV-634, (S.D. New York, February 12, 2018), the Court did not dismiss an FDCPA case pursuant to *Spokeo* holding:

First, Plaintiff has constitutional standing to assert his FDCPA claim because, unlike the plaintiffs in *Rajamin,* he has experienced a concrete injury. Even though Plaintiff is not injured by the allegedly invalid assignments, he can claim an injury from Bayview's *misrepresentation of its right to foreclose,* because abusive debt collection—even of a debt actually owed—is a harm in itself.

The difference is subtle but crucial. "[A]n alleged procedural violation can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents a `risk of real harm' to that concrete interest." *Strubel v. Comenity Bank,* 842 F.3d 181, 190 (2d Cir. 2016) (quoting *Spokeo,* 136 S. Ct. at 1549). The FDCPA does just that. To protect consumers' interests, the FDCPA prohibits "[t]he false representation of . . . the . . . legal status of any debt" and "[t]he threat to take any action that cannot legally be taken." 15 U.S.C. §§ 1692e(2), (5). "[C]ourts within and outside this Circuit have consistently held that a violation of . . . § 1692e can give rise to an injury in fact" because "a materially false or misleading statement is not a `bare procedural violation' but rather an infringement on an individual's substantive right conferred by Congress to receive truthful information in debt collection communications." *Taylor v. Fin. Recovery Servs., Inc.,* 252 F. Supp. 3d 344, 349 (S.D.N.Y. 2017) (quoting *Spokeo,* 136 S. Ct. at 1549); *see also Zirogiannis v. Seterus, Inc.,* 707 F. App'x 724, 727 (2d Cir. 2017) (holding that an FDCPA notice provision protects a concrete interest because it allows the consumer to "confirm that he indeed owes the debt sought by the collector and its amount before paying it").

In *Maddox v. Bank of New York Mellon Trust Company,* No. 15-cv-1053 (W.D, New York  July 24, 2018), the Court denied a Motion to

Dismiss based on *Spokeo*, stating:

The question in a case like this one—where the plaintiff has alleged only a bare procedural violation—is whether that violation "present[s] a material risk of harm to the underlying concrete interest [the legislature] sought to protect." *Crupar-Weinmann v. Paris Baguette Am., Inc.,* 861 F.3d 76, 80-81 (2d Cir. 2017).[1]Applying that standard here, the Court can "reasonably assume" that a violation of the satisfaction statutes "raise[s] a sufficient degree of real risk" to a concrete interest, such that a person aggrieved by such a violation has suffered a cognizable injury-in-fact. *Strubel v. Comenity Bank,* 842 F.3d 181, 193 (2d Cir. 2016) (applying these standards to various violations of the Truth In Lending Act). Specifically, it is reasonable to assume that a failure to record a satisfaction of mortgage clouds the title

to a person's real property by making it appear that unencumbered property is, in fact, encumbered, thereby creating barriers to selling the property. The failure to record a satisfaction also creates the appearance that a person's mortgage loan—one of "the biggest debt[s] many people ever take on in their lives"—has not yet been paid in full. *Nicklaw v. CitiMortgage,* 855 F.3d 1265, 1273 (11th Cir. 2017) (Martin, J., dissenting from the denial of rehearing en banc). In other words, to everyone but the property owner, the "mortgage[] [would] appear[] not to have been satisfied," which, the Court can reasonably assume, could cause the property owner harm "if they had, for example, tried to sell or encumber the subject property, or tried to finance another property and been subjected to a credit check." *Jaffe v. Bank of Am., N.A.,* 197 F. Supp. 3d 523, 528 (S.D.N.Y. 2016).

To be sure, this risked injury may be "ephemeral," and many property owners aggrieved by a violation of the satisfaction statutes may never suffer any tangible injury. *Zink v. First Niagara Bank, N.A.,* 206 F. Supp. 3d 810, 817 (W.D.N.Y. 2016). But "intangible injuries can . . . be concrete," and if those injuries are particularized, they give rise to an injury-in-fact. *Spokeo,* 136 S. Ct. at 1549. *See also Jaffe,* 197 F. Supp. 3d at 528 ("Whether such harm actually *was* realized is of no moment, because a plaintiff `need not allege any *additional* harm' beyond the violation of the statutory right.") (quoting *Spokeo,* 136 S. Ct. at 1549) (first emphasis added in *Jaffe;* second emphasis in *Spokeo*). In short, it appears that a violation of the "statutorily mandated procedures" in the satisfaction statutes "entail[s] the concrete injury necessary for standing," regardless of whether the Plaintiffs have "`allege[d] any *additional* harm beyond the one [the New York legislature] has identified.'" *Strubel,* 842 F.3d at 189 (quoting *Spokeo,* 136 S. Ct. at 1549) (brackets in *Strubel* omitted; emphasis in *Spokeo*). Thus, the Court adopts Judge McCarthy's recommendation to deny BONY Mellon's motion to dismiss for lack of standing.

In Mills v. Turner, CA. No 15-13267(D. Massachusetts August 25, 2017), the Court found that there was such a concrete injury requiring the Plaintiff to hire an attorney:

Here, the threatened injury of filing suit, as stated in the letters, prompted Mills to retain counsel. Such threats along with the confusion and resulting retention of counsel are sufficiently distinct, palpable, and personal as opposed to abstract or speculative. See Lujan v. Defenders of Wildlife, 504 U.S. at 564-65; Whitmore v. Arkansas, 495 U.S. 149, 155 (1990).

In addition to the threatened injury and confusion Mills experienced, the section 1692e statutory violation plaintiff established presents "a risk of harm to [Mills'] concrete interest established by the FDCPA to be free of `any false, deceptive, or misleading representation or means in connection with the collection of any debt.'" Girdler v. Convergent Outsourcing, Inc., Civil Action No. 15-13359-DJC, 2016 WL 7479541, at *3 (D. Mass. Dec. 29, 2016) (quoting section 1692e and rejecting lack of standing argument). As a result, "this injury is one that Congress has elevated to the status of a legally cognizable injury through the FDCPA." Id. (quoting Church V. Accretive Health, Inc., 654 Fed.Appx. 990, 994 (11th Cir. 2016) (unpublished). Plaintiff's viable section 1692e claim therefore establishes standing under Article III. See id. As aptly reasoned in an unpublished Eleventh Circuit decision, "`through the FDCPA, Congress has created a new right — the right to receive the required disclosures in communications governed by the FDCPA—and a new injury—not receiving such disclosures.'" Id. (quoting Church v. Accretive Health, Inc., 654 Fed.Appx. 990, 994 (11th Cir. 2016)) (per curium); see Jordan v. ER Sols., Inc., 900 F.Supp. 2d 1323, 1326 (S.D.Fla. 2012).

In sum, the existence of the threatened harm and confusion resulting in the retention of counsel as well as the concrete injury establishes an injury in fact. Defendant's summary judgment motion based on a lack of standing therefore lacks merit.

Finally, this court recognizes that, although the complaint seeks attorney's fees, "reimbursement of the costs of litigation cannot alone support standing."[12] Steel Co. v. Citizens for a Better Env., 523 U.S. 1 83, 108 (1998). Thus, entitlement to an award of attorney's fees under 15 U.S.C. § 1692k or the "legal costs incurred" to respond to the "collection activity" (Docket Entry # 16, p. 4) does not establish standing. See id. at 107 ("litigation must give the plaintiff some other benefit besides reimbursement of costs that are a byproduct of the litigation: and "`interest in attorney's fees is . . . insufficient to create).

In sum, the existence of the threatened harm and confusion resulting in the retention of counsel as well as the concrete injury establishes an injury in fact. Defendant's summary judgment motion based on a lack of standing therefore lacks merit.

Thus the complaint was sufficiently pleaded with Summary Judgment being denied.

In *Ready  v. Synchrony Bank*, No 2:17-cv-434, D. Maine, April 6, 2018, the

Court did not dismiss a Telecommunications  Act case in which the Plaintiff alleged

that he had received automated phone calls in violation of the Federal Statute

prohibiting such action.  The Court held that violation of the statute itself constituted

a concrete injury:

Even prior to this development, as the plaintiff observes, *see* Response in Opposition to Defendant's Motion To Dismiss ("Opposition") (ECF No. 12) at 8-9, a number of courts, including the United States District Court for the District of Massachusetts, criticized *Romero* and/or reached the same conclusion as the Ninth Circuit, that is, that calls allegedly violating the TCPA inherently cause concrete injury for purposes of standing to pursue a TCPA claim, *see, e.g., Gibbs v. SolarCity Corp.,* 239 F. Supp.3d 391, 395-96 (D. Mass. 2017) ("This court agrees with the majority of courts finding that Congress, when it enacted the TCPA, recognized receiving unsolicited telemarketing calls is a legally cognizable harm and comprises a `concrete' injury. . . . Unsolicited telemarketing phone calls[,] by their nature, invade the privacy and disturb the solitude of their recipients.") (citation and internal quotation marks omitted); *Abante Rooter & Plumbing, Inc. v. Pivotal Payments,* Inc., Case No. 16-cv-05486-JCS, 2017 WL 733123, at *6 (N.D. Cal. Feb. 24, 2017) ("In the wake of the Supreme Court's decision in *Spokeo,* numerous courts have addressed whether a plaintiff's allegations that it received ATDS telephone calls in violation of the TCPA is sufficient to establish Article III standing. The vast majority of courts that have addressed this question have concluded that the invasion of privacy, annoyance and wasted time associated with robocalls is sufficient to demonstrate concrete injury.") (citations omitted).

The First Circuit likely would adopt the better-reasoned majority approach.[2]

Because, as discussed below, the plaintiff's allegations suffice to state a claim of TCPA violations, they also suffice to demonstrate that he suffered a concrete injury for purposes of standing to press his TCPA claim.

The Court effectively stated that harm arising from a technical violation

constituted a concrete injury to survive a *Spokeo* dismissal.

     In *Zauderer v. Cirrus Consulting Group(USA), Inc.,* 265 F. Supp. 3d

104, 108(D. Massachusetts, 2017), the Court found that a violation of the

Telecommunications act was a concrete injury sufficient to confer standing:

Judges in this district have found that a mere technical violation of the TCPA is, by itself, a concrete injury sufficient to confer standing. *See Physician's Healthsource, Inc.,* 247 F.Supp.3d at 149-50, 2017 WL 1534221, at *8 (finding a concrete injury occurred when plaintiff received unsolicited faxes that rendered their fax line unavailable for legitimate business messaging while processing the junk fax); *Gibbs v. SolarCity Corp.,* Civil Action No. 4:16-cv-11010-TSH, 239 F.Supp.3d 391, 395-96, 2017 WL 925003, at *5 (D. Mass. Mar. 8, 2017) (finding that "receiving unsolicited telemarketing calls is a legally cognizable harm and comprise a concrete injury [that]... present the precise harm and infringe the same privacy interest Congress sought to protect, in enacting the TCPA")(collecting cases). Several other circuit and district courts have reached the same conclusion. *See Imhoff Inv., L.L.C. v. Alfoccino, Inc.,* 792 F.3d 627, 633 (6th Cir. 2015) (finding Article III standing where the plaintiff suffered a "violation of the statutorily-created right to have ones phone line and fax machine free from the transmission of unsolicited advertisements" by receiving a fax transmission on two occasions); *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.,* 781 F.3d 1245, 1251-53 (11th Cir. 2015) (a single unsolicited fax may constitute a "concrete and personalized injury in the form of the occupation of [the recipient's] fax machine for the period of time required for the electronic transmission of the data" sufficient to establish Article III standing); *O.P. Schuman & Sons v. DJM Advisory Grp. LLC,*2017 WL 634069, at *2 (E.D. Pa. Feb. 16, 2017) (holding that receiving a single-page facsimile transmission is sufficient to establish "concrete and particularized harm, as it was more than a `bare procedural violation'").

This failure to provide the information about the owner of the mortgage loan and the

master service was a substantive violation, for which the statute provides recourse.

Congress intended when it enacted the statute that upon a request for the information

mandated by the statute that the Plaintiff must be provided this information. There is

no other part of the statute. Congress enacted TILA to allow transparency regarding the owner of mortgage loans. The consumer requests this information from the servicer and the information must be provided, with failure to provide this information resulting in damages. Here the Plaintiff adequately established damages by way of affidavit, which included the cost of postage and paper and copy charges to request this information again due to the failure of Embrace or Roundpoint to provide this information He incurred time away from his usual activities and incurred costs to call and visit his attorney regarding this claim for information regarding the owner, holder and Master Servicerof the mortgage note which purportedly attempted to foreclose on his property.

Thus there is a genuine issue of material fact as to the damages incurred by the Plaintiff and this Motion should be denied.

## THE REGULATION X COUNTS ARE WELL PLEADED AND ALLEGE DAMAGES THUS SATISFYING THE SPOKEO STANDARD

The case law regarding Regulation X and RESPA holds that actual damages for failure to correct and error include the cost of postage and coping costs in transmitting two Notices of Error to the loan servicer. These damages alone are sufficiently pleaded in addition to the other damages pleaded. Contrary to Defendant's assertions the pleadings do not merely relate to legal fees and the costs of litigation. In his affidavit, Plaintiff has asserted factual information regarding the damages. In Count III, the Plaintiff alleged that Roundpoint had had failed to

correct an error for seeking to foreclose without a face to face meeting and

complying with the HUD regulations by removing the charges from the mortgage

loan account.  He established in his affidavit:

27.     I never had a face to face meeting, with anyone.  No representative of
Roundpoint Mortgage or Embrace Home Loans came to my home to discuss loss
mitigation.

28.     I have reviewed the affidavit of Amber Todd and  the Statement of
Undisputed Facts filed by Defendants.

29.     I specifically deny that I spoke with anyone from Roundpoint or any agent
or anyone at my home on August 24, 2017 at 4:30 PM or at any time or on August
23, 2017 at 4:30 PM or at any time or on August 23, 2017 at any time.

30.     I did not  accept an interview with  any person on behalf of Roundpoint or
Embrace on August 24, 2017 at 4:30 PM or on August 23, 2017.  No meeting
occurred on either day.

31.             I was not at my home on August 24, 2017 at 4:30 PM or on August
23, 2017 at 3:30 PM.

32.     I was not present with any person on behalf of Rounpoint or Embrace when
a call was made in my presence on either August 23, 2017 or August 24, 2017.

33.     I did not speak with a Roundpoint Representative on the telephone for any
reason on August 24, 2017 at 4:30 or at any other time that day or any other day.

34.     I did not refuse to inform a Roundpoint representative on any August 23,
2017 or August 24, 2017 of any phone call in the presence of any Rounbdpoint
representative.

35.     No person gave me a letter in a sealed personal and confidential envelope on
August 24, 2017 or August 23, 2017 or at any time. No letters were left at my
house on either date or any other date.

36.     The Statement of Undisputed Facts contains a false assertion of fact, namely
that a representative of Roundpoint and Embrace went to my home for purposes of
conducting a face- to face meeting on August 23, 2017.  No one came to my house
on that date.

37.    As a result of this there is a factual dispute and there is a genuine issue of material fact, namely that no one came to my home for a face to face meeting on August 23, 2017 or August 24, 2017.

38.    The HUD Regulations also require, prior to declaration of any default or acceleration of the note, that the mortgagor be provided information on all loss mitigation options.

39.    Roundpoint was required to offer and communicate with me regarding the loss mitigation options indicated in the Regulations. These were the following loss mitigation options.

- Deeds in lieu of foreclosure
- preforclosure sales
- assumptions
- special forebearance
- recasting of mortgages
- partial claims

40.    These requirements are located in the Code of Federal regulations, which state:

### 203.605 Loss mitigation performance.

**(a)** *Duty to mitigate.* Before four full monthly installments due on the mortgage have become unpaid, the mortgagee **shall** evaluate on a monthly basis all of the loss mitigation techniques provided at § 203.501 to determine which is appropriate. Based upon such evaluations, the mortgagee shall take the appropriate loss mitigation action. Documentation must be maintained for the initial and all subsequent evaluations and resulting loss mitigation actions. Should a claim for mortgage insurance benefits later be filed, the mortgagee shall maintain this documentation in the claim review file under the requirements of § 203.365(c).

**(b)** *Assessment of mortgagee's loss mitigation performance.*

HUD will measure and advise mortgagees of their loss mitigation performance through the Tier Ranking System (TRS). Under the TRS, HUD will analyze each mortgagee's loss mitigation efforts portfolio-wide on a quarterly basis, based on 12 months of performance, by computing ratios involving loss mitigation attempts, defaults, and claims. Based on the ratios, HUD will group mortgagees in four tiers (Tiers 1, 2, 3, and 4), with Tier 1 representing the highest or best

ranking mortgagees and Tier 4 representing the lowest or least satisfactory ranking mortgagees. The precise methodology for calculating the TRS ratios and for determining the tier stratification (or cutoff points) will be provided through FEDERAL REGISTER notice. Notice of future TRS methodology or stratification changes will be published in the FEDERAL REGISTER and will provide a 30-day public comment period.

Before HUD issues each quarterly TRS notice, HUD will review the number of claims paid to the mortgagee. If HUD determines that the lender's low TRS score is the result of a small number of defaults or a small number of foreclosure claims, or both, as defined by notice, HUD may determine not to designate the mortgagee as Tier 3 or Tier 4, and the mortgagee will remain unranked.

Within 30 calendar days after the date of the TRS notice, a mortgagee that scored in Tier 4 may appeal its ranking to the Deputy Assistant Secretary for Single Family or the Deputy Assistant Secretary's designee and request an informal HUD conference. The only basis for appeal by the Tier 4 mortgagee is disagreement with the data used by HUD to calculate the mortgagee's ranking. If HUD determines that the mortgagee's Tier 4 ranking was based on incorrect or incomplete data, the mortgagee's performance will be recalculated and the mortgagee will receive a corrected tier ranking score.

**(c)** *Assessment of civil money penalty.* A mortgagee that is found to have failed to engage in loss mitigation as required under paragraph (a) of this section shall be liable for a civil money penalty as provided in § 30.35(c) of this title.

- o 41.   Prior to transmitting a default notice or accelerating the mortgage loan, Roundpoint did not provide to me or discuss with me any of the loss

mitigation options pursuant to 24 CFR 203.51, which states:

### § 203.501 Loss mitigation.

Mortgagees must consider the comparative effects of their elective servicing actions, and must take those appropriate actions which can reasonably be

expected to generate the smallest financial loss to the Department. Such actions include, but are not limited to, deeds in lieu of foreclosure under § 203.357, pre-foreclosure sales under § 203.370, partial claims under § 203.414, assumptions under § 203.512, special forbearance under §§ 203.471 and 203.614, and recasting of mortgages under § 203.616. HUD may prescribe conditions and requirements for the appropriate use of these loss mitigation actions, concerning such matters as owner-occupancy, extent of previous defaults, prior use of loss mitigation, and evaluation of the mortgagor's income, credit and property.

42.     Thus there was no basis for the loan being declared in default or accelerated without compliance with the HUD regulations.

The Plaintiff categorically denied that anyone came to his house on August 23, 2017 as alleged by the Plaintiff. Thus he has created a genuine issue of material fact regarding this issue and thus Summary Judgment cannot be granted on this Count for failing to correct the error for liability or for lack of damages. He asserted that the legal fees and costs for which he sought damages related to the process in which he had an attorney file two Notices of Error to correct the error.

The second error which Roundpoint did not correct was the failure to identify the owner and master servicer of the mortgage loan pursuant to a Request for Information. Once again the Defendants suggest that there were no damages pursuant to Spokeo. However, the Plaintiff established damages in his affidavit, when he stated:

69.     Due to this failure to provide this information, I discussed this matter with my attorney. He incurred the time and cost of sending another letter to Roundpoint in conjunction with the RESPA claim and then again on September 18, 2018, incurring additional mailing, legal and copy costs for sending out an additional letter under TILA requesting the identity of the owner of the mortgage

loan as he had sent in November 2017.. My attorney spent an additional hour of time sending out the second letter and reviewing this matter with me regarding the failure to identify the owner. The second letter cost $6.48 to mail.

70.    I incurred time away from my usual activities speaking with my attorney about this failure to provide this information.

71.    I have incurred actual damages, costs and legal fees in regard to this

failure to comply with this TILA request. I would not have incurred these damages

if the TILA request has been complied with.

 a.     I have incurred costs for gasoline to visit my  attorney on at least one occasions, driving to my  attorney's office for one  round trips totaling 17.8miles to discuss the failure of Roundpoint to respond.  The IRS standard mileage allowance provides for .56 per mile. I spent $3.50 for gas to go to my attorney's office to discuss the failure of Roundpoint to identify the owner of the mortgage loan.

b.     I have used my cell phone to call and receive calls from my attorney regarding the failure of Roundpoint to respond to the TILA request. As a result I had to use electricity to recharge his cell phone for calls when he spoke with his attorney. The increased cost in electricity for this was $.10.

c.     As stated above, I incurred attorney fees due not to file this case nor to litigate this case, but to review the failure of Roundpoint to respond to the TILA claim. These fees were $400.00.

d.     I spent time away from my usual activities speaking with my attorney and going to his office to review the failure of Roundpoint to respond to the TILA claim.

Contrary to the assertions of the Defendant, the Plaintiff has established

actual damages by his affidavit.There is a  no dispute in the pleadings that

Roundpoint did not correct the error and did not identify the master servicer. There

is a dispute as to the damages. However the Plaintiff has pleaded damages on both

Regulation X Counts , particularly that he incurred the costs of mailing the Notices

of Error, which included legal fees in reviewing the response and in transmitting each notice of error.

In *Sanchez v. Johnston, Blumberg & Associates and Seterus*, Inc. N0. 16-cv-7056 (N.D. Illinois, Eastern Division, August 14, 2018), the Court  held that any enforcement of the Regulation X was an enforceable violation of RESPA.   As in this case, the loan servicer Defendant,  contended that since the foreclosure sale had not occurred that there was no violation of regulation and thus the RESPA action should be dismissed on that ground. The Court held:

> The caselaw regarding ripeness of claims for violations of 12 C.F.R. § 1024.41 is sparse. But another court in this District did consider the issue in *Stephens v. Capital One, N.A.,* No. 15-cv-9702, 2016 WL 4697986 (N.D. Ill. Sept. 7, 2016). In *Stephens,* the defendant filed a foreclosure complaint alleging that the plaintiffs had missed payments on his mortgage. *Id.* at *1. . . the defendant voluntarily dismissed the foreclosure complaint. *Id.* But the plaintiffs still sued the defendant, alleging, among other things, a violation of 12 C.F.R. § 1024.41(f). *Id.* at *2. The defendant moved to dismiss the complaint, arguing that the plaintiffs' RESPA claim was not ripe due to the defendant's voluntary dismissal of the foreclosure complaint and the fact that foreclosure was only a future possibility. *Id.* at *4. Upon considering the argument, the *Stephens* court held that the taking (or loss) of property was not required for the claimed RESPA violation to be ripe. *Id.* at *5. The court found no such requirement in 12 C.F.R. § 1024.41(a), and further reasoned that under 12 U.S.C. § 2605(f) damages may be recovered when a party fails to comply with any provision of RESPA and there is no language indicating that taking property is the only way to fail to comply with RESPA's provisions. *Id.* The court also noted that RESPA is a consumer protection statute and, as such, should be interpreted broadly. *Id.*

This Court agrees with the reasoning in *Stephens.* There is no indication in the language of the statute or regulations that a plaintiff must wait until his or her property is foreclosed upon to bring an action. To the contrary, 12 C.F.R. § 1024.41(f)(2) expressly states that the prohibited action is a servicer making "*the first notice or filing* required by applicable law for any judicial or non-judicial foreclosure process." 12 C.F.R. § 1024.41(f)(2) (emphasis added). And 12 U.S.C. § 2605(f) provides that "[w]hoever *fails to comply with any provision of this section* shall be liable to the borrower for each such failure." 12 U.S.C. § 2605(f) (emphasis added).

The Defendant has filed its Motion without making any analysis of the remedial consumer statute and the regulation promulgated. Under 12 U.S.C. § 2605(f), damage occurs when a party fails to comply with any provision of the Real Estate Settlement Procedures Act. Additionally, "the express terms of the Real Estate Settlement Procedures Act clearly indicate that the Real Estate Settlement Procedures Act is, in fact, a consumer protection statute." *Johnstone*, 173 F. Supp. 2d at 816. Numerous courts have held that "consumer protection statutes are to be interpreted broadly in order to give effect to their remedial purposes." *Katz v. Dime Sav. Bank, FSB*, 992 F. Supp. 250, 255-256 (W.D.N.Y. 1997). Thus the purpose of Regulation X is to require servicers to follow certain rules. The failure to follow those rules can be enforced by an action commenced under 12 U.S.C. 2605(k), which provides that whoever fails to comply with any provision of this section shall be  liable for actual damages, statutory damages upon a showing of pattern and practice and attorney fees and costs.

In *Cameron v Ocwen Loan Servicing*, LLC CA No. 2:18-cv-428,(SD, Ohio, 2020) the Court held the Defendant liable for failure to respond to a Notice of Error which the servicer did not correct . The Court found that the actual damages consisted of the cost of preparing the notice of error, which was neither responded to nor corrected. Thus Summary Judgment was granted for  the Plaintiff in that case with the issue of statutory damages to remain for trial

The Plaintiff has demonstrated pattern and practice by alleging that Roundpoint ignored these two Notices of Error and the TILA request and chose not to respond. In *Grembobowiec v. Select Portfolio Servicing, Inc.* CA No. 18-16885 (D.N.J., Jul 16, 2019),the Court  held:

Under RESPA, "[a]ctual damages encompass compensation for any pecuniary loss including such things as ... expenses for preparing, photocopying and obtaining certified copies of correspondence." *Cortez v. Keystone Bank, Inc.,* No. 98-2457, 2000 WL 536666, at \*12 (E.D. Pa. May 2, 2000) (citing *Rawlings v. Dovenmuehle Mortg., Inc.,* 64 F. Supp. 2d 1156, 1164 (M.D. Ala. 1999)) . . However, attorneys' fees incurred *to remedy a RESPA violation* "are recoverable as actual damages under RESPA if they are not incurred in connection with brining a suit under the statute." *McGahey v. Fannie Mae,* 266 F. Supp. 3d 421, 441 (D. Me. 2017); *see also Miranda v. Ocwen Loan Servicing, LLC,* 148 F. Supp. 3d 1349, 1355 (S.D. Fla. 2015) (finding that "reasonable attorney's fees incurred as a result of having to send additional correspondence due to Defendant's alleged failure to respond" are actual damages). Here, Plaintiff seeks attorney's fees incurred to remedy Defendant's violations. Compl. ¶¶ 40. Thus, to the extent that these attorney's fees do not include costs of bringing this litigation, Plaintiff plausibly alleged actual damages in Counts I, II, and III, as to attorney's fees associated with remedying Defendant's alleged violations.

The Court held that pattern and practice did not have a magic number but that more than two was sufficient to establish pattern and practice and entitlement to statutory damages:

While there is no "magic number," courts have found a plausible pattern or practice when the plaintiff alleged "more than two violations of RESPA." *Kapsis v. Am. Home Mortg. Servicing Inc., 923 F. Supp. 2d 430, 445-49 (E.D.N.Y. 2013)*.

Here, Plaintiff plausibly alleges a pattern or practice. As discussed above, Plaintiff has plausibly pled at least five violations of Regulation X: (1) a violation of Section 1024.41(b) as to the First Application; (2) a violation of Section 1024.41(b) as to the Second Application; (3) a violation of Section 1024.41(c) as to the First Application; (4) a violation of Section 1024.41(c) as to the Second Application; and (5) a violation of Section 1024.35(e) as to the First Notice. Therefore, Plaintiff sufficiently stated a claim for statutory damages under Counts I, II, and III.

In this case the Plaintiff has alleged three failures to respond to Requests for Information and Truth In Lending which establish entitlement to actual damages based on pattern and practice.  Thus the Plaintiff has established causal connection, liability, actual damages and pattern and practice for statutory damages on Count III.  His affidavit establishes the damages for the two RESPA claims, which has not been rebutted by the Defendant. There is certainly a genuine issue of material fact as to the liability and damages. Thus Summary Judgment should be denied on the RESPA Counts.

As indicated above, the TILA count for inaccurate statements and the facts of this case mandate against Summary Judgment. The Defendants who asserted

Federal Jurisdiction seek to challenge it based on Spokeo. The Plaintiff has also established sufficient actual damages to support its claim in the TILA Count. The Count incorporated the allegations contained in the complaint relating to the Breach of Contract, including the charges to the Plaintiff's mortgage loan account.  The Plaintiff establisehd damages arising from the TILA violation in his affidavit. In addition, the congressional intent for information for homeowners establishes that denial of an accurate statement is a concrete harm to the borrower.

The Defendant did not seek Summary Judgment regarding the inaccurate payoff Count. Thus Summary Judgment cannot be granted on this Count. The Plaintiff has raised genuine issues of material fact as to all counts and thus this count should not dismissed and the Injunctive Relief cannot be dismissed until the case is resolved and the Defendants actually provide a face to face meeting.

DAVID CURTIS

By his Attorney

January 21, 2020                              /s/ John B. Ennis

JOHN B. ENNIS, ESQ. #2135

1200 Reservoir Avenue

Cranston, Rhode Island 02920

(401) 943-9230

Jbelaw75@gmail.com

CERTIFICATE OF SERVICE

I hereby certify that I emailed a copy of this Memorandum to Samuel Bodurtha on
January 21, 2020.

/s/ John B. Ennis