UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DAVID CURTIS,
    Plaintiff,

v.

EMBRACE HOME LOANS, INC. and
ROUNDPOINT MORTGAGE
SERVICING CORPORATION,
    Defendants.

C.A. No. 18-057-JJM-PAS

## ORDER

David Curtis has sued his mortgage lender and the servicing company, after he defaulted on his mortgage, claiming that they violated various federal consumer protection statutes and regulations, and breached the mortgage contract. The Court finds that these claims fail as there is no evidence Mr. Curtis suffered any injury-in-fact to support his federal claims. Because the Court therefore lacks subject-matter jurisdiction on the remaining state-law claims, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motion for Summary Judgment. ECF No. 30. The Court remands this matter to the state court for adjudication of the remaining claims.

*FACTS*

David Curtis borrowed $284,009 from Embrace Home Loans, Inc. ("Embrace")[1] in April 2016 and secured repayment of the loan with a mortgage (the "Mortgage") on

---

[1] Defendant RoundPoint Mortgage Servicing Corporation ("RoundPoint") services the loan.

a home in West Warwick, Rhode Island (the "Property").[2]  About a year later, Mr. Curtis stopped making his monthly mortgage payments.

Over the next few months, Defendants sent Mr. Curtis a series of written correspondences and emails.  Mr. Curtis did not respond because he thought he would be able to bring the loan current eventually.

RoundPoint, on behalf of Embrace, sent Mr. Curtis a Notice of Default and Intent to Accelerate.  A week later, RoundPoint sent Mr. Curtis an email to let him know of the past due balance, to provide a click-through for payment, and another click-through to access documents that included a Borrower Assistance Application. In response, Mr. Curtis emailed Round Point in which he said: "I need a loan mod due to a change in salary at work."  Three weeks later, RoundPoint, on behalf of Embrace, sent Mr. Curtis an email with a total payment amount, and a link to access a Borrower Assistance Application.  Mr. Curtis did not apply.[3]  Attorneys for Defendants then informed Mr. Curtis that Embrace had chosen to accelerate the note, and that Defendants scheduled the Property for foreclosure.

Mr. Curtis, through his attorney, sent RoundPoint Requests for Information to (1) identify and provide an address of the current owner, current servicer, and master servicer of Mr. Curtis' mortgage; and (2) provide the contractual status of the mortgage loan at the current owner's acquisition.  Mr. Curtis' attorney also sent two

---

[2] The Federal Housing Agency ("FHA") backed Mr. Curtis' Mortgage such that HUD regulations, as well as Rhode Island state law, govern the Mortgage.

[3] Mr. Curtis explained that he only responded to electronic communications despite all the written correspondences Defendants sent to him.

Notices of Error one stating his belief that charges to his account were improper because Defendants implemented no loss mitigation procedures and no face-to-face meeting occurred, and the other notice claiming that RoundPoint had failed to provide a response to a Request for Information on the current owner, current servicer, and master servicer of Mr. Curtis' mortgage. RoundPoint, on behalf of Embrace, sent Mr. Curtis a response to the notices, which provided Mr. Curtis with information and documents. Mr. Curtis' counsel sent RoundPoint a request for loss mitigation options that included an application for loan modification. Defendants responded after reviewing the loan modification application, with a request for more information and documents. Mr. Curtis did not respond.

Mr. Curtis then filed this lawsuit against Defendants.[4] The Amended Complaint includes six causes of action, four under federal law and two under state law:

> COUNT I: Truth in Lending Act violations based upon allegations that Defendants did not identify the owner and holder of the Mortgage Note within 10 days of a Request for Information.
>
> COUNT II: Truth in Lending Act violations based upon allegations that RoundPoint sent a payoff quote that included unreasonable costs and fees charged to the mortgage loan account.
>
> COUNT III: RESPA Regulation X violations on the grounds that Defendants failed to cure a Notice of Error by removing legal fees, advertising costs, and other improper fees relating to Defendants' foreclosure that Mr. Curtis alleges was noticed without a face-to-face meeting and without advising him of any loss mitigation options.

---

[4] Mr. Curtis filed his complaint in the Rhode Island Superior Court, Kent County, and Defendants removed it to federal court.

> COUNT IV: Breach of contract alleging that Defendants have tried to foreclose without supplying Mr. Curtis a face-to-face meeting or informing him of any loss mitigation options.
>
> COUNT V: Injunctive relief arising from all allegations in this action.
>
> COUNT VI: Truth in Lending Act violations because Defendants sent monthly mortgage loan statements that improperly charged legal fees and related costs from an alleged invalid foreclosure.

ECF No. 1-1. After the period for discovery ended, Defendants moved for summary judgment. ECF No. 30.

1) *Injury-in-Fact Requirement for Federal Claims*

Injury-in-fact is a bedrock constitutional requirement for federal jurisdiction. The United State Supreme Court mandates that a plaintiff "allege [more than] a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016). Post-*Spokeo* decisions make clear that this requirement applies to TILA and RESPA; that is, a claim that alleges a violation of these federal laws, but fails to produce any evidence of a concrete or particularized injury, must be dismissed. *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 587-91 (7th Cir. 2016) (dismissing a RESPA claim for failing to allege sufficient injury-in-fact); *Pemental v. Bank of N.Y. Mellon*, C.A. No. 16-483S, 2017 WL 3279015, at *7 (D.R.I. May 10, 2017) (dismissing a TILA claim because the plaintiff failed to allege sufficient injury-in-fact); *Davidson v. PNC Bank, N.A.*, No. 1:16-cv-569-WTL-MPB, 2016 WL 7179371, at *1 n.1 (S.D. Ind. Dec. 9, 2016); *see Zia v. CitiMortgage, Inc.*, 210 F. Supp. 3d 1334 (S.D. Fla. Sept. 26, 2016) (based on *Spokeo*, consumer claim dismissed based on technical violation of New York

4

statute prohibiting delay in recording of mortgage discharge); *Dolan v. Select Portfolio Servicing*, No. 03-CV-3285-PKC-AKT, 2016 WL 4099109, at *6 (E.D.N.Y. Aug. 2, 2016) (rejecting a plaintiff's attempt to hold a loan servicer liable for failing to provide him with so-called "hello" and "goodbye" letters, "as the plain language of Section 2605 indicates that an allegation of actual damages is necessary to state a claim for liability.").

The only evidence of a concrete injury before this Court on summary judgment is the attorneys' fees, costs, and expenses Mr. Curtis incurred in asserting his TILA claim. For damages resulting from alleged RESPA violations, Mr. Curtis alleges: (a) costs for gasoline to visit his attorney or at least five occasions; (b) cell phone to call and receive calls from his attorney; (c) electricity to recharge his cell phone calls when he spoke with his attorney; (d) attorney's fees and costs for the prosecution of this action; (e) mailing, paper, and postage costs for the mailing and transmittal of a Notice of Error; (f) his mortgage loan account has been charged unreasonable fees and costs for uncorroborated and unreasonable property inspections and improper legal fees and costs. ECF No. 1-1 ¶ 73. Beyond these allegations of damages, the only damage to which Mr. Curtis testified was that he was "[v]ery stressed whether I'm going to be able to stay in my house." ECF No. 31-26 at 81.

While these would be recoverable if there had been a TILA or RESPA violations, they do not replace the injury-in-fact required by *Spokeo*. With no evidence of an injury-in-fact other than the attorneys' fees, costs, and expenses in prosecuting the federal claims as his only actual injury, *Spokeo* bars Mr. Curtis' TILA

and RESPA claims. As such, Defendants are entitled to summary judgment on the TILA and RESPA claims, Counts I, II, III, and VI.

2) *Supplemental Jurisdiction – State Law Claims*

Without the federal claims, the Court needs to reassess its jurisdiction over Counts IV and V. "Where a federal court has dismissed the anchoring federal claims over which it has original jurisdiction, the court 'may decline to exercise supplemental jurisdiction' over the remaining state-law claims." *Desjardins v. Willard*, 777 F.3d 43, 45 (1st Cir. 2015) (quoting 28 U.S.C. § 1367(c)(3)); *Camelio v. Am. Fed'n*, 137 F.3d 666, 672 (1st Cir. 1998). This decision "depends on a 'pragmatic and case-specific evaluation of a variety of considerations,' including 'the interests of fairness, judicial economy, convenience, and comity.'" *Desjardins*, 777 F.3d at 45 (quoting *Camelio*, 137 F.3d at 672).

The Court has evaluated all the factors and balanced the competing interests and finds that Mr. Curtis should litigate the remaining state claims in state court, the court where Mr. Curtis brought his claims originally. So, the Court remands this matter to the Rhode Island Superior Court.

IT IS SO ORDERED.

/s/ John J. McConnell, Jr.

John J. McConnell, Jr.
Chief Judge
United States District Court

May 4, 2020